In re COURTESY INNS, LTD., INC., Debtor.

Randolph F. JONES, Appellant,

v.

BANK OF SANTA FE, Appellee.

No. 93–1100.

United States Court of Appeals, Tenth Circuit.

Nov. 18, 1994.

Randolph F. Jones, pro se.

Mark L. Fulford and Leslie Petri of Sherman & Howard, Denver, CO, for appellee.

Before SETH, BARRETT and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Randolph F. Jones, president of debtor Courtesy Inns, Ltd., Inc. (Courtesy), appeals an award made against him personally for $6,953 attorney's fees for bad faith filing of a bankruptcy petition. Jones argues that the bankruptcy court was without jurisdiction to award sanctions under 28 U.S.C. § 1927 and that the filing was not in bad faith.[1]

## I

Courtesy was indebted to the Bank of Santa Fe (Bank) for approximately $1.4 million secured by a mortgage on Courtesy's sole asset, a motel in Minnesota. After efforts at a workout failed, the Bank scheduled a foreclosure sale for October 12, 1990. That sale was stayed when Courtesy filed a Chapter 11 petition on October 11, 1990, in Colorado. The Bank filed a motion to dismiss the bankruptcy petition as having been filed in bad faith and requested that attorney's fees be assessed against the debtor. After a hearing, the bankruptcy court assessed attorney's fees against both Courtesy and Jones, relying on 28 U.S.C. § 1927. Jones appealed the award against himself, but the district court rejected all of his contentions and affirmed the fee award.

The bankruptcy court made an explicit finding as follows:

The Court views this filing in continued opposition to the bank's attempt to obtain possession of this property in order to allow it to foreclose as the Minnesota courts authorized it to do as litigation by the debtor that's vexatious, that is purely for the purpose of delaying the creditor from enforcing its rights.

III R. 60–61. On appeal the district court made a more elaborate analysis, concluding by finding "[t]he dispute with the Bank was the motivation for the filing. In sum, the evidence here nearly describes the archetype of a bad faith filing." II R. tab 29 at 4. We can add little to the analysis of the facts in the district court's Memorandum Opinion and Order, and would have no difficulty affirming except for the issue of the bankruptcy court's jurisdiction to impose sanctions. Jurisdiction is a question of law we review de novo. See Hoyt v. Robson Cos., 11 F.3d 983, 984 (10th Cir.1993).

## II

The explicit basis of the bankruptcy court's sanction award was 28 U.S.C. § 1927, which provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

In affirming without discussing the jurisdiction question that concerns us, the district court concluded that Jones was an " 'other person' under § 1927 who 'multiplie[d] the proceedings ... unreasonably and vexatiously ...' by filing the Chapter 11 petition." II R. tab 29 at 3.

Jurisdiction under § 1927 turns on whether the bankruptcy court is a "court of the United States." The historical and statutory notes appended to § 1927 refer to the definition of "court of the United States" in another section in the same title, 28 U.S.C. § 451. That is a definition section applicable to all of Title 28, and it states:

> As used in this title:
>
> The term "court of the United States" includes the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of International Trade and any court created by Act of Congress *the judges of which are entitled to hold office during good behavior.*

*Id.* (emphasis added). The question then is whether the definition limits "courts of the United States" to Article III courts, in which judges hold office under lifetime appointments. Bankruptcy judges serve a specified term of fourteen years.

In construing § 1927 and other sections of Title 28 containing identical language, the circuits are split. *Compare In re TCI Ltd.,* 769 F.2d 441, 450 (7th Cir.1985) (affirming bankruptcy court's imposition of sanctions under § 1927) [2] *with Perroton v. Gray (In re Perroton),* 958 F.2d 889, 893–96 (9th Cir. 1992) (holding bankruptcy court is not a court of the United States entitled to waive filing fees under 28 U.S.C. § 1915(a)); *see also Brown v. Mitchell (In re Arkansas Communities, Inc.),* 827 F.2d 1219, 1221 (8th Cir.1987) ("questionable whether a bankruptcy court falls within the definition of 'courts of the United States' for purposes of imposing sanctions against attorneys under this section"). Most of the bankruptcy court opinions that have dealt with the issue have

concluded that they are not "courts of the United States" within the meaning of this and related sections.

■ We must agree with *In re Perroton*—which extensively discusses the cases and the legislative history—that the bankruptcy court may not impose sanctions under § 1927. An argument can be made to the contrary: the U.S. Constitution art. I, § 8 [4] contemplates federal legislation creating courts exercising jurisdiction over bankruptcies; § 1927 does not explicitly reference § 451; and § 451 itself states that courts of the United States "includes" courts in which judges hold office during good behavior.

Compelling to us, however, is that amendments in the 1978 Bankruptcy Act explicitly added to the § 451 definition "and judge of the bankruptcy courts, the judges of which are entitled to hold office for a term of 14 years." Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 213, 1978 U.S.C.C.A.N. (92 Stat.) 2549, 2661. That amendment was to become effective June 28, 1984; but a 1984 amendment to § 402(b) made by Pub.L. No. 98–353, § 113, 1984 U.S.C.C.A.N. (98 Stat.) 333, 343, had the effect of eliminating that language. There is no explicit legislative history as to why this change was made. From the comment by the senators involved in passing the 1984 amendments, especially Senator Hatch, *see* 1984 U.S.C.C.A.N., 98th Cong. 2d Sess. at 576, 594–97, 602–06, the elimination appears to be from concerns arising as a result of *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which struck down portions of the 1978 Bankruptcy Act as unconstitutional. Aided by this legislative history, we believe we must hold that bankruptcy courts are not within the contemplation of § 1927.

### III

The Bank's brief declined to address the issue of bankruptcy court jurisdiction under § 1927, arguing that "it is clear that a non-

---

**2.** Another panel later observed that the issue of the bankruptcy court's jurisdiction under § 1927 was not addressed in *TCI* and affirmed instead on the basis of Rule 9011 without addressing the

§ 1927 issue. *In re Memorial Estates, Inc.,* 950 F.2d 1364, 1369–70 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2969, 119 L.Ed.2d 589 (1992).

party such as Jones, who was the sole force behind the filing of papers with the Court, may be sanctioned personally as the signer of documents under Bankruptcy Rule 9011 or for his own acts under 11 U.S.C. § 105 or the Court's inherent powers." Appellee's Br. at 9 n. 3. We can, of course, affirm on a different basis if the record and law support it. *Schweiker v. Hogan,* 457 U.S. 569, 585 n. 24, 102 S.Ct. 2597, 2607 n. 24, 73 L.Ed.2d 227 (1982) (appellate court may affirm district court judgment on any basis having support in the record).

We look first at Bankruptcy Rule 9011, which provides:

(a) **Signature.** Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state the party's address and telephone number. The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case. If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the person whose signature is required. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

The petition and all papers filed in this case listed Courtesy as the debtor and were signed by Jones as debtor's president. No attorney represented Courtesy, and Jones apparently is not an attorney. Jones was not himself a party to the bankruptcy proceeding.

In *Gelt v. Janowitz (In re The Chisholm Co.),* 166 B.R. 706 (D.Colo.1994), the bankruptcy court had sanctioned debtor's attorney and debtor's president, as debtor's alter ego, relying on Rule 9011 and 28 U.S.C. § 1927. *Id.* at 712. The debtor was not sanctioned. *Id.* at 715. The district court reversed the imposition of sanctions against the debtor's president, who had signed the petition in his corporate capacity. *Id.* at 711, 715. Relying on *Caldwell v. Farris (In re Rainbow Magazine, Inc.),* 136 B.R. 545, 553 (Bankr. 9th Cir.1992), *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 536, 554, 111 S.Ct. 922, 925, 934–35, 112 L.Ed.2d 1140 (1991), and cases dealing with general corporate liability under Rule 11, the district court concluded that if sanctions were appropriate, they could be levied only against the debtor and not its president. *In re Chisholm,* 166 B.R. at 713–14. Because the debtor's president had not signed the bankruptcy petition in his individual capacity, by implication, he was not a *person* who signed a document in violation of Rule 9011. *Id.* at 715.

The *Chisholm* judge noted a conflict of authority regarding whether a corporate officer can be held liable under Rule 9011 for signing a pleading in his official capacity. *Id.* at 713–14. The leading case holding no liability for an officer signing in an official capacity is *In re Rainbow Magazine.* There, the Ninth Circuit's Bankruptcy Appellate Panel reversed in part sanctions levied against a debtor's chief executive officer. Relying on *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), the court concluded that "the reach of Rule 11 should not extend beyond its plain language," and that Rule 9011 "does not contemplate sanctions against a person who is neither the

person who signed the offending pleading nor a party." *Id.* 136 B.R. at 552–53. *In re Rainbow Magazine* rests on the legal distinction between signing a document as a corporate officer on behalf of a corporation, and signing individually.[3]

The Supreme Court's *Business Guides* decision affirmed sanctions against a corporation when the offending motion was signed by the corporation's president on behalf of the corporation. 498 U.S. at 554, 111 S.Ct. at 934–35. The Court held that the signature of the president should have been treated as the signature of the corporation. "A corporate entity, of course, cannot itself sign anything; it can act only through its agents. It would be anomalous to determine that an individual who is represented by counsel falls within the scope of Rule 11, but that a corporate client does not because it cannot itself sign a document." *Id.* at 548, 111 S.Ct. at 931. The *Chisholm* judge relied upon that reasoning to hold that the imposition of sanctions against the debtor's president was incorrect as a matter of law when the pleadings were not signed as an individual, but solely in his capacity as an officer of the corporation.[4]

The case before us is unlike *In re Rainbow Magazine, Chisholm*, and the other cited cases, because the corporation here, Courtesy, was never represented by counsel. One day after Jones filed the voluntary petition in his capacity as president of Courtesy, the court entered an order stating that under

the Rules of Practice, corporate entities cannot appear in these proceedings *pro se* by and through officers or employees of the corporation. The petition must be signed and submitted by an attorney licensed to practice in this Court. The peti-

tion, as filed will be DISMISSED within ten (10) days without further notice or hearing, if Debtor does not have counsel entered as attorney of record in this proceeding.

I R. tab 5. Courtesy then filed several applications for permission to employ counsel. The court held a hearing (the transcript of which is not in the appellate record) but ultimately entered two separate orders denying the applications to employ two different attorneys, without stating reasons. *See id.* tabs 44–45. Despite the court's warning that the petition would be dismissed unless an attorney made an appearance, proceedings continued—with a number of filings by Jones as president of Courtesy—until the petition was dismissed five months after it was filed. *See id.* tab 53. Proceedings continued thereafter on the dispute over sanctions and attorney's fees, in which Jones continued to file papers as an officer of Courtesy.

Thus, as a practical matter, Jones acted as the representative of the corporate debtor unless we construe his actions to be those of the corporation. It seems incongruous to hold that the president and sole shareholder who makes all filings on behalf of a lawyerless, totally insolvent corporation cannot be sanctioned under Rule 9011, when an attorney who signed the same papers and the corporation itself could be sanctioned. But we must deal with the precise language of the rule; in a strict sense Jones is not an attorney representing a party nor is he the party.

*Pavelic & LeFlore*, interpreting Fed. R.Civ.P. 11 when it read almost word-for-word the same as Rule 9011, refused to hold a law firm sanctionable when the papers were signed by a partner in the name of the

---

**3.** The *In re Rainbow Magazine* court rejected two other cases in which the principal officer of a corporate party, who had personally participated in sanctionable conduct, had been sanctioned. *See Chicago Bank of Commerce v. Amalgamated Trust and Savings Bank (In re Memorial Estates, Inc.)*, 116 B.R. 108 (N.D.Ill.1990); *Midwest Properties No. Two v. Big Hill Inv. Co.*, 93 B.R. 357 (N.D.Tex.1988). It discounted those holdings because of their failure to "address the conflict between [the] result and the plain language of the Rule," *In re Rainbow Magazine*, 136 B.R. at 553.

**4.** The Bank cites *Searcy v. Houston Lighting & Power Co.*, 907 F.2d 562 (5th Cir.), *cert. denied*, 498 U.S. 970, 111 S.Ct. 438, 112 L.Ed.2d 421 (1990), as authority for imposing sanctions on a nonparty under Rule 9011. *Searcy*, however, involved a litigant who appeared pro se, originally representing both himself individually and the corporation of which he was the president. The appeal involved only Mr. Searcy individually. *See id.* at 564.

law firm. The Court said "our task is to apply the text, not to improve upon it." *Pavelic & LeFlore*, 493 U.S. at 126, 110 S.Ct. at 460. In *Business Guides*—holding the corporation was sanctionable under Rule 11 when the signature was by a president and sole shareholder—the Supreme Court again applied a strict reading, stating: "The plain language of the Rule again provides the answer." 498 U.S. at 548, 111 S.Ct. at 931. A strict reading of Rule 9011 would deny the bankruptcy court jurisdiction under that rule to sanction Jones. We need not determine whether the special facts of the instant case make Jones either a de facto attorney or a party within the meaning of Rule 9011, however, as there is another basis upon which we may affirm.

## IV

In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), the Supreme Court recognized the inherent power of a federal district court to sanction conduct abusive of the judicial process. The Supreme Court rejected arguments that specific federal statutes and the various sanctioning provisions of the federal rules reflect legislative intent to displace the court's inherent powers. It held that

> when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.

*Id.* at 50, 111 S.Ct. at 2135. Justice Scalia's dissenting opinion may be read to imply that the Court's holding only applies to Article III courts. *See id.* at 58, 111 S.Ct. at 2139–40. We believe, however, that the majority opinion does not limit inherent power to Article III courts; it says:

> It has long been understood that "[c]ertain implied powers must necessarily result to our *Courts of justice* from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of

all others." *United States v. Hudson,* 7 Cranch 32, 34 [3 L.Ed. 259] (1812); see also *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 [100 S.Ct. 2455, 2463, 65 L.Ed.2d 488] (1980) (citing *Hudson* ). For this reason, "*Courts of justice* are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn,* 6 Wheat. 204, 227 [5 L.Ed. 242] (1821).

*Id.* at 43, 111 S.Ct. at 2132 (emphasis added). Nevertheless, the Ninth Circuit Bankruptcy Appellate Panel, in deciding *In re Rainbow Magazine*, rejected inherent power as a basis for sanctioning someone in Jones' position; it observed that neither *Chambers* nor any other case upholds the sanction of a nonparty under an inherent power theory. *In re Rainbow Magazine*, 136 B.R. at 553.

We believe the Ninth Circuit Bankruptcy Appellate Panel in that case overlooked the provisions of 11 U.S.C. § 105(a), which provide that the bankruptcy "court may issue any order ... necessary or appropriate to carry out the provisions of this title" and that nothing "preclude[s] the court from, sua sponte, taking any action or making any determination necessary or appropriate ... to prevent an abuse of process." We believe, and hold, that § 105 intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in *Chambers*. *Cf. Mountain Am. Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 447 (10th Cir.1990) (concluding that bankruptcy courts do not have inherent civil contempt power but that such power is granted by 11 U.S.C. § 105—disagreeing with Ninth Circuit). The power to maintain order and confine improper behavior in its own proceedings seems a necessary adjunct to any tribunal charged by law with the adjudication of disputes. We should not lightly infer its absence, and we see no reason to do so here.

We believe a remand of this case for reconsideration in light of our holdings is unnecessary in the circumstances before us. It is clear that the bankruptcy filing was not an attempt to save the corporation or to benefit other shareholders or other creditors. It

was for reasons entirely personal to Jones. Courtesy was a one-asset corporation whose stock was owned entirely by Jones. Its sole asset was worth significantly less than the secured claim held by the Bank. Foreclosure had been permitted after adjudication in the Minnesota courts. One day before a foreclosure sale was to be held, Jones filed Courtesy's petition for bankruptcy in order to stay the sale. As the district court made plain, the corporation had no chance of survival. Jones' apparent hope was that if he could force the Bank to accept a sum much less than the amount of its secured claim, he could induce another purchaser to pay enough more for the asset to make some money available for unsecured creditors. Jones himself was the sole owner of Courtesy's principal unsecured creditor. Although it did not make specific findings, the bankruptcy court's order called Jones the "alter ego" of the corporation. I R. tab 58.

The bankruptcy court could have applied its local rule to dismiss Courtesy's petition because it had no attorney representative.[5] The bankruptcy court was not required to follow its own local rule; it retained the power to modify its application in a particular case. *See* Colo.L.B.R. 929 ("Any of these rules may [be modified as] ... necessary to do substantial justice."). Here it rejected Jones' attempts to have an attorney appointed by the court, apparently because there were no assets from which the attorney could be paid. When it allowed Jones to continue to file papers in the bankruptcy court after considering dismissal and the appointment of an attorney, its actions obviously were in the interest of giving Jones a full opportunity to convince the court he was not acting in bad faith or frivolously. In these circumstances the inherent power of the bankruptcy court is surely broad enough to sanction Jones personally when it ultimately found the bankruptcy filing was "purely for

the purpose of delaying the creditor from enforcing its rights." III R. 60–61.

We therefore AFFIRM the decision imposing the sanctions.

---

**5.** Colorado Local Bankruptcy Rule 910(c) provides:

No corporation, partnership, or other unincorporated organization shall file a petition under Title 11, U.S.C., or otherwise appear, unless it is represented by an attorney authorized to practice in the United States District Court for the District of Colorado. The attor-

ney representing such an entity shall sign the petition.

*See also Schreibman v. Walter E. Heller & Co. (In re Las Colinas Development Corp.),* 585 F.2d 7 (1st Cir.1978) (upholding rule against corporation acting pro se against constitutional and antitrust law violation claims), *cert. denied,* 440 U.S. 931, 99 S.Ct. 1268, 59 L.Ed.2d 487 (1979).