**In re Aldona AMBOTIENE, Debtor.**

No. 03–27303–ess.

United States Bankruptcy Court, E.D. New York.

Sept. 17, 2004.

Richard J. McCord, Certilman, Balin, Adler & Hyman, East Meadow, Chapter 7 Trustee.

Office of the United States Trustee, By Lisa Tracy, New York.

Kaufman, Friedman, Plotnicki & Grun, LLP, By Howard Grun, Maia M. Walter, New York, for Grand Street Realty L.L.C.

## MEMORANDUM DECISION AWARDING ATTORNEYS' FEES AND COSTS TO THE CHAPTER 7 TRUSTEE

ELIZABETH S. STONG, Bankruptcy Judge.

Before the Court is a request for attorneys' fees and costs brought by Richard J. McCord as Chapter 7 trustee (the "Trustee") in the bankruptcy case of Aldona Ambotiene (the "Debtor"). On March 23, 2004, the Trustee filed a motion (the "Trustee's Motion") to compel Grand Street Realty, LLC (the "Landlord") to give him access to 318 Grand Street, Brooklyn, N.Y. 11211 (the "Premises") to determine whether certain personal property listed by the Debtor on Schedule B of her bankruptcy petition (the "Petition") was of value to her bankruptcy estate. The Trustee also requested an award of attorneys' fees and costs against the Landlord and its counsel, Kaufman Friedman Plotnicki & Grun LLP (the "Landlord's Counsel"), on grounds that the Landlord and Landlord's Counsel caused the Trustee to incur unnecessary expense by unreasonably interfering with and obstructing his efforts to carry out his statutory and fiduciary duties under Title 11 of the United States Code (the "Bankruptcy Code"), including his duties to locate and inspect assets of the bankruptcy estate.

A hearing was held on the Trustee's Motion on April 6, 2004, at which the Trustee, the Landlord by Landlord's Counsel, and the Office of the United States Trustee, appeared and were heard. By Order dated April 6, 2004, the Court directed the Landlord to give the Trustee access to the Premises. A further hearing was held on the Trustee's request for attorneys' fees and costs on April 19, 2004, at which the Trustee, the Landlord by Landlord's Counsel, and the Office of the United States Trustee, appeared and were heard (the "April 19 Hearing"). For the reasons stated below, after consideration of the relevant factors, the Court grants the Trustee an award of attorneys' fees in the amount of $6,987 and expenses in the

amount of $166.79.[1]

*Factual and Procedural Background*

The Debtor filed for relief under Chapter 7 of the Bankruptcy Code on December 30, 2003, and was granted a discharge on May 7, 2004. The Debtor's Petition lists restaurant equipment with an estimated value of $7,000, including a refrigerator, dishwasher, grill/stove, and sink (the "Equipment"), as her personal property. Petition, Schedule B. The Equipment was the largest non-exempt asset listed on the Debtor's Petition. It was located at the Premises where the Debtor operated a restaurant through a wholly-owned entity called Krezo Two. *See* Petition, Schedule G; Affirmation in Support of Trustee's Application Compelling Access to Property of the Estate dated March 23, 2004 ("Trustee Aff."), ¶ 6. The Trustee argues that he had a duty to inspect the Equipment to determine whether it had any value to the Debtor's bankruptcy estate. Trustee Aff., ¶¶ 8, 9. The Trustee further argues that even if the Equipment was owned by Krezo Two as opposed to the Debtor, Krezo Two was the Debtor's personal property and became property of her bankruptcy estate when she filed the Petition. Trustee Aff., ¶¶ 11, 12. The Trustee seeks, among other relief, an award of costs against the Landlord and Landlord's Counsel, pursuant to this Court's equitable powers under Section 105 of the Bankruptcy Code. Trustee Aff., ¶ 2; 11 U.S.C. § 105.

It is undisputed that the Trustee made several informal and formal requests to the Landlord, through Landlord's Counsel, for access to the Premises to inspect the Equipment. Trustee Aff., ¶ 10. It is also undisputed that these requests were rejected by the Landlord, through Landlord's Counsel, until the Court ruled on the Trustee's Motion. In particular, the record reflects the following.

- Before March 12, 2004, the Trustee requested "access to the debtor[']s premises to evaluate the equipment of the business to determine if said equipment would be of value to the bankruptcy estate," and the Landlord "refused [to] give the Trustee access to the subject premises." Affirmation in Limited Opposition to the Notice of Motion to Vacate the Automatic Stay dated March 12, 2004 ("Trustee's Limited Opposition."), ¶¶ 5, 6.

- On or about March 12, 2004, the Trustee again requested access to the Premises by the Trustee's Limited Opposition, which sought an order directing the Landlord to give him access to the Premises.

- At the March 18, 2004, initial hearing on the Landlord's Motion for Stay Relief and the Trustee's Limited Opposition (the "March 18 Hearing"), the Office of the United States Trustee, on behalf of the Trustee, again requested that the Trustee be given access to the Premises.

- On or about March 23, 2004, the Trustee again requested access to the Premises by his Motion Compelling Access to Property of the Estate. As of that date, the Landlord continued to refuse access to the Trustee. As the Trustee affirmed, "[d]espite numerous

1. The Court reserved decision on the motion for sanctions to allow the parties an opportunity to settle the matter. The Court received letters dated May 7, 2004, May 11, 2004, and May 14, 2004, from the Trustee and Landlord's Counsel concerning their settlement negotiations and lack of agreement. *See* Case No. 03–27303, Docket Entries 28, 29, and 30. While that correspondence reflects good faith efforts by the parties to resolve this matter, those efforts were unsuccessful and do not affect the Court's analysis of the issues addressed herein.

requests, [the Landlord] has adamantly refused to grant the Trustee access to the Premises claiming that it will seek to sell the equipment and apply the proceeds towards Krezo Two's rent arrears." Trustee Aff., ¶ 10.

- As the Trustee stated at the April 19 Hearing: "From day one, I said all along, I begged, I implored counsel . . . to just let me in. I know, I believe that there is nothing there, but I have to do my job. And as you know, I could not get access until you intervened and issued an order and that's why I'm seeking the relief [of an award of costs]." April 19 Hearing Transcript, p. 14.

- The Landlord allowed the Trustee and its representative into the Premises to inspect the Equipment after the Court issued an order requiring it to do so. *See* April 19 Hearing Transcript, p. 20.

The record shows that the Landlord's reason for refusing access to the Trustee was its position that the Landlord, not the Debtor's bankruptcy estate, was entitled to keep any value in the Equipment for itself. *See* Affirmation in Opposition to the Trustee's Motion Compelling Access to Property of the Estate dated March 25, 2004 ("Landlord Aff."), ¶ 6; Trustee Aff., ¶ 10. The Landlord asserted that Krezo Two owed it back rent from October 2003 forward, that under New York law, title to any fixtures remaining in the leased premises vested in the Landlord, and that Krezo Two's assets were not property of the Debtor's bankruptcy estate. Landlord Aff., ¶¶ 6, 9. In effect, the Landlord and Landlord's Counsel determined that there were no circumstances under which the Trustee would be entitled to claim the value of the Equipment for the Debtor's bankruptcy estate, and attempted to impose that result upon the Trustee by denying him access to the Premises to inspect

the Equipment to determine whether he should proceed to litigate those issues.

The Office of the United States Trustee also participated in these proceedings. In particular, counsel for the Office of the United States Trustee appeared at the April 19 Hearing and stated:

I think there is an important policy issue at hand in this case. The only issue that was before the Court was the mere right of the trustee to go in and inspect [the Equipment]. All these underlying issues were not before [the] Court at the time. And what counsel has in effect done is force the trustee to come up with all these theories of how he has the right and pre-litigate the issue, and I don't think it's at all efficient. . . . [T]rustees have a duty to go in and assure themselves that there are no assets possible for the estate that they could liquidate. They have an absolute duty to do that. [The Trustee] made it clear, all other issues aside, he made it clear that that was the duty he was looking to fulfill in this case. . . .

Our position is certainly that where the only issue is whether the trustee can inspect that there be some sort of recognition that the trustee's duty is important in that case. . . .

It's frustrating for somebody, I think, like [the Trustee] and myself who have to oversee an efficient running of an estate to see such a waste. And I think certain burdens need to be considered in this case. . . .

Our position is that the trustee should not have had to take the steps that he took in this case and should be compensated for the efforts that he had to put forth and that includes time that [he] would not have had to spend if he had just been, really, allowed access to inspect.

April 19 Hearing Transcript, pp. 45–48 (argument of Lisa Tracy, Esq.).

After gaining access to the Premises, the Trustee concluded that it was in the best interests of the estate to abandon its interests in the Equipment and Krezo Two. *See* April 19 Hearing Transcript, pp. 11, 13. Accordingly, there remains to be decided only that portion of the Trustee's Motion that seeks sanctions in the form of an award of attorneys' fees and costs.

### Grounds for an Award of Sanctions

■ An award of sanctions is an extraordinary remedy. As the Second Circuit has observed:

> Even though the subject of sanctions is a distasteful one for any court, increasing tensions in and occasional abuses of the judicial system have prompted both judges and legislators to turn toward sanctions as a means of improving the litigation process.... [T]he sources of judges' sanctioning power are diverse, and the standards invoked have not always been either clear or consistently applied.

*Oliveri v. Thompson*, 803 F.2d 1265, 1271 (2d Cir.1986). One of the most common forms of sanctions requested is an award of attorneys' fees and costs, as the Trustee seeks here. As the Second Circuit further observed:

> [S]anctions for misconduct and abuse of the legal system seem to be inevitably interwoven with the problems of shifting the burden of attorneys' fees, which have become the primary cost factor in litigation. For a prevailing party to recover all or part of the burden imposed by the fees his attorney charges could be viewed as an aspect of compensation for damages inflicted by the other party. Shifting that burden might also be viewed as a penalty imposed for either bringing an unsuccessful lawsuit or for unsuccessfully defending against a meritorious lawsuit. Indeed, there is no clear line between attorneys' fees as damages and attorneys' fees as sanctions.

*Id.* The Second Circuit identified several "primary sources" of power to impose sanctions in the form of an award of attorneys' fees, including the court's inherent power, 42 U.S.C. § 1988, 28 U.S.C. § 1927, and Fed.R.Civ.P. 11. *Id.* Each basis for an award of sanctions or costs has its own elements and serves a particular purpose. It is useful to review the grounds for an award of attorneys' fees under Section 1988, Section 1927, Bankruptcy Rule 9011 and Fed.R.Civ.P. 11, and Bankruptcy Rules 7037 and Fed.R.Civ.P. 37, in order to place the Trustee's Motion under Section 105 in context and perspective.

■ *Section 1988* Section 1988 provides for fee-shifting in certain types of federal civil rights actions, and serves the purpose of providing complete relief to successful plaintiffs in federal civil rights actions. As the Second Circuit found in *Oliveri*, "an award under § 1988 is available to the prevailing party and is charged against the losing party, not his attorney.... If a plaintiff prevails, then attorneys' fees are ordinarily allowed the plaintiff unless 'special circumstances would render such an award unjust.'" *Oliveri*, 803 F.2d at 1272, quoting *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). *See, e.g.*, 42 U.S.C. § 1988; 42 U.S.C. § 2000e–5(k) (Equal Employment Opportunities Act); 42 U.S.C. § 12205 (Americans with Disabilities Act); 29 U.S.C. § 216(b) (Fair Labor Standards Act); 29 U.S.C. § 2617(a)(3) (Family and Medical Leave Act).

■ *Section 1927* Section 1927 of the Judicial Code is aimed at misconduct by an attorney who "multiplies the pro-

ceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Section 1927 provides for taxing the "costs, expenses, and attorneys' fees" caused by such misconduct in the conduct of court proceedings against the responsible attorney. It serves the purpose of deterring unprofessional conduct in court proceedings by officers of the court, and "'deter[ring] unnecessary delays in litigation.'" *United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) (quoting H.R. Conf. Rep. No. 1234, 96th Cong., 2d Sess. 8). As the Supreme Court has observed, Section 1927 "is concerned only with limiting the abuse of court processes." *Roadway Express v. Piper*, 447 U.S. 752, 762, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).[2]

■ *Bankruptcy Rule 9011 and Fed. R.Civ.P. 11* Bankruptcy Rule 9011 imposes a duty on attorneys and unrepresented parties to certify by their signature that any "petition, pleading, written motion or other paper" filed with the court is not being presented "for any improper purpose," and is supported by existing law or a nonfrivolous argument for a change in the law. Fed. R. Bankr.P. 9011. Like its counterpart Fed.R.Civ.P. 11, Bankruptcy Rule 9011 serves the purpose of assuring courts and litigants that motions, pleadings, and other written submissions signed by an attorney bear the attorney's certification that he or she has acted in a manner that is objectively professional and reasonable under the circumstances. *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir.2003) (the required mental state is "objective unreasonableness"); 10 COLLIER ON BANKRUPTCY ¶ 9011.04[2][b] (15th ed. rev.2004). *See also id.* at ¶ 9011.04[3] ("subjective *factors* may be considered" but "'Rule 11 sanctions are based on an objective standard of reasonableness *under the circumstances.*'") (emphasis in original) (quoting *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir.1995)); *Oliveri*, 803 F.2d at 1274–75.[3]

■ *Bankruptcy Rule 7037 and Fed.R.Civ.P. 37* Bankruptcy Rules 7037 and 9014(c) invoke the requirements of Fed.R.Civ.P. 37 in adversary proceedings and contested matters and provide for

---

**2.** The Second Circuit has held that "[a] bankruptcy court may impose sanctions pursuant to 28 U.S.C. § 1927 if it finds that '[an] attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" *Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 230 (2d Cir.1991) (quoting *Oliveri*, 803 F.2d at 1273). Other courts have reached different conclusions. *See, e.g., In re Volpert*, 110 F.3d 494, 500 (7th Cir.1997) (questioning whether bankruptcy court may impose sanctions under Section 1927); *Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd.)*, 40 F.3d 1084, 1085–86 (10th Cir.1994) (bankruptcy court may not impose sanctions under Section 1927).

**3.** At the April 19 Hearing, the Trustee and the Office of the United States Trustee also argued that Bankruptcy Rule 9011 and Fed. R.Civ.P. 11 support an ·award of attorneys'

fees and costs on the Landlord and Landlord's Counsel. *See* April 19 Hearing Transcript, pp. 16–17 (argument of Trustee); pp. 49–50 (argument of counsel for the Office of the United States Trustee). The Court declines to rely on Bankruptcy Rule 9011 and Fed.R.Civ.P. 11 for at least two reasons. First, Bankruptcy Rule 9011 sets forth certain procedures which were not pursued by the Trustee here. *See* Fed. R. Bankr.P. 9011(c)(1)(A). Accordingly, on the present record, relief under Rule 9011 is not available. Second, the issues presented by this record relate to the operation of the bankruptcy process. Supervision of that process and the administration of the bankruptcy estate are the province of Section 105. Bankruptcy Rule 9011, by contrast, addresses a lawyer's certification of papers that he or she signs and submits to a court—an important but different purpose.

cost-shifting in the context of discovery disputes. Rule 37 provides that a court "shall" award costs to a prevailing party in a discovery dispute against the party or attorney whose conduct led to the motion, unless the moving party did not first make a good faith effort to obtain the discovery without court action, the opposing party's position was substantially justified, or other circumstances would make an award of costs unjust. The purpose of these Rules is at least two-fold: first, to discourage unnecessary discovery disputes; and second, to encourage the resolution of discovery disputes outside of court proceedings when they do arise. *See Nevada Power Co. v. Monsanto Co.*, 151 F.R.D. 118, 120 (D.Nev.1993) (stating that local rules working in tandem with Rule 37 serve "to lessen the burden on the court and reduce the unnecessary expenditure of resources by litigants, through promotion of informal, extrajudicial resolution of discovery disputes.").

### Grounds for an Award of Attorneys' Fees Under Section 105

 The Court now turns to Section 105 of the Bankruptcy Code, which is the primary basis upon which the Trustee seeks an award of attorneys' fees and costs here. Section 105 recognizes the court's authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. The purposes of Section 105 include assuring that the administrative processes established by the Bankruptcy Code are able to provide for the prompt and fair administration of bankruptcy cases. As with the fee-shifting provisions described above, the purposes of Section 105 may be effectuated by an award of attorneys' fees where the award is appropriate to carry out the provisions of the Bankruptcy Code.

 The efficient operation of the Bankruptcy Code is important in every bankruptcy case, but it may well have special significance and consequences in the individual Chapter 7 case with few potential estate assets, where the Chapter 7 trustee must promptly investigate, collect, and distribute property of the estate. *See* pp. 35–37, *infra.* As described below, it is not necessary to define the outer bounds of Section 105 to recognize that Section 105 permits the Court to address overreaching conduct by parties in interest and their attorneys that obstructs and imposes unwarranted delay and expense on the bankruptcy administration process. Because Section 105 addresses the Court's authority to issue orders that carry out the provisions of the Bankruptcy Code, including the provisions that define the duties and obligations of a Chapter 7 trustee and parties in interest, it is the appropriate framework in which to consider the Trustee's request for an award of attorneys' fees and costs.

 Section 105(a) of the Bankruptcy Code states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105 recognizes the Court's inherent power to maintain order in the courts, to punish inappropriate behavior, and to discipline attorneys when necessary. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("if in the informed discretion of the court, neither the statutes nor the Rules are up to the task, the court may safely rely on its inherent power."); *Jones v. Bank of Santa Fe (In re Courtesy Inns, Inc.)*, 40 F.3d 1084, 1089 (10th Cir. 1994) (bankruptcy courts have inherent power recognized by Supreme Court in *Chambers*); 1 COLLIER ON BANKRUPTCY ¶ 8.07[1] (15th ed. rev.2004). *See also In*

re Kmart Corp., 359 F.3d 866, 871 (7th Cir.2004) ("the power conferred by § 105(a) is one to implement rather than override"). As this Circuit has found, Section 105(a) allows courts to manage their dockets and afford appropriate relief where necessary. Casse v. Key Bank Nat'l Ass'n (In re Casse), 198 F.3d 327, 336 (2d Cir.1999) (quoting 2 COLLIER ON BANKRUPTCY at 105–5 to –7 (15th ed.1999)).

As the Supreme Court has stated, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." Chambers, 501 U.S. at 45, 111 S.Ct. 2123. This is particularly true in the context of a request for attorneys' fees, because such awards are an exception to the usual "American Rule," under which each party bears its own litigation costs. Id. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); Oliveri, 803 F.2d at 1271.

Several courts have concluded that Section 105 provides a sound and appropriate basis for a bankruptcy court to make an award of attorneys' fees and costs. Thus, for example, the Eighth Circuit determined that "to not allow a bankruptcy court to impose attorney's fees [under Section 105] as sanctions against those who willfully abuse the judicial process would ignore the realities of present-day litigation and the relationship between the court systems." Brown v. Mitchell, 827 F.2d 1219, 1221–22 (8th Cir.1987). Other courts have reached the same conclusion. See, e.g., Jones v. Bank of Santa Fe, 40 F.3d 1084 (10th Cir.1994) (recognizing bankruptcy court's inherent power under Section 105 to sanction debtor's president for bad faith filing); In re Joe Silver, 46 B.R. 772 (D.Colo.1985) (affirming bankruptcy court's authority to assess and award attorney fees and expenses for bad faith bankruptcy filing); In re Gorshtein, 285 B.R. 118, 124 (Bankr.S.D.N.Y.2002) (recognizing that "[c]ourts have held that [the] language [of Section 105(a)] is broad enough to empower the court to impose sanctions in conjunction with its inherent power"); First Fed. Sav. and Loan Ass'n of Largo v. Froid (In re Froid), 106 B.R. 293 (Bankr.M.D.Fla.1989) (acknowledging bankruptcy court's authority under Section 105 to impose fees and sanctions for willful abuse of judicial process).

While it is apparent that Section 105 provides authority for a bankruptcy court to make an award of attorneys' fees and costs in appropriate circumstances, the question remains under what circumstances such an award should be allowed. The Court finds that here, it is appropriate to consider four factors to determine whether an award of attorneys' fees and costs to a chapter 7 trustee is "appropriate to carry out the provisions of [the Bankruptcy Code]." These are first, whether the Chapter 7 trustee acted in good faith to pursue his statutory duties and obligations under the Bankruptcy Code; second, whether the response by the objecting party was made in objective good faith; third, whether the objecting party had an opportunity to correct its course and failed to do so; and fourth, whether the Chapter 7 trustee or the debtor's estate was damaged by incurring unnecessary costs as a result of the objecting party's actions.

The Court first considers whether the Trustee proceeded in good faith to pursue his duties and obligations under the Bankruptcy Code. Here, as described above, the record shows that the Trustee made several informal and formal requests for access to the Premises to determine whether the Equipment had any value to the Debtor's bankruptcy estate. See p. 31, supra. As also described above, the Equipment was the largest single non-exempt asset identified by the Debtor on her

Petition. *See* p. 30, *supra.* In response, the Landlord, by Landlord's Counsel, rejected these requests because it wished to claim the value of the Equipment for itself. *See* p. 31, *supra. See also* April 19 Hearing Transcript, p. 19. The Court concludes that the Trustee's efforts to gain access to the Premises to inspect the Equipment, by his informal and formal requests including the Trustee's Motion, were a good faith effort to pursue his duties and obligations under the Bankruptcy Code as trustee of the Debtor's bankruptcy estate.

▆▆▆▆ The Court next considers whether the Landlord and Landlord's Counsel responded in good faith to the Trustee's efforts. At the outset, the Court notes that the Bankruptcy Code imposes statutory duties upon a Chapter 7 trustee including a duty "[to] collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest..." 11 U.S.C. § 704. Even where property is claimed as exempt, a Chapter 7 trustee may be required to take steps to determine if it can be used, leased, or sold to create value for the estate. *Salzer v. Jocquel Supply (In re Salzer)*, 180 B.R. 523, 529–30 (Bankr.N.D.Ind.1993). The trustee is charged with duties to maximize the distribution to creditors, and to distribute those proceeds as expeditiously as possible. *In re C. Keffas & Son Florist, Inc.*, 240 B.R. 466, 474 (Bankr.E.D.N.Y.1999).

▆▆▆▆ The obligations created by these statutory duties are tangible, not theoretical. If the Chapter 7 trustee fails to fulfill these obligations, he or she may be liable to creditors. *Lebovits v. Scheffel (In re Lehal Realty Assoc.)*, 101 F.3d 272, 276 (2d Cir.1996); *In re C. Keffas & Son*

*Florist, Inc.*, 240 B.R. at 474. Liability may be based on an estimate of the financial harm suffered by the creditors or the estate. *Lebovits v. Scheffel*, 101 F.3d at 276. These duties do not permit a trustee to yield to a creditor's efforts to exercise self-help by obstructing the trustee's inspection of possible estate assets that are listed in a debtor's bankruptcy petition.

Here, the Landlord and Landlord's Counsel did not offer any persuasive argument in response to the Trustee's position as to his duties in connection with the administration of the Debtor's bankruptcy estate, and in particular, his duty to inspect actual or potential property of the Debtor's bankruptcy estate. Rather, as noted above, the Landlord and Landlord's Counsel urged, at each juncture, that issues concerning the ultimate ownership of the Equipment, including issues involving New York's Limited Liability Company law, governed whether the Trustee's request for access to the premises should be granted. If this were the standard, then the burdens imposed on Chapter 7 trustees in administering cases with few assets would be enormous. As one court has observed:

> Being a chapter 7 trustee is a difficult and risky business. While the trustee is entitled to a statutory part of the filing fee, currently $60.00, that amount rarely compensates the trustee for the time spent on the case. Trustees can only hope that by achieving certain efficiencies by way of volume and by making a substantial fee in an occasional case, that the work of a trustee will be profitable.

*In re Fischer,* 210 B.R. 467, 469 (Bankr. D.Minn.1997). *See* 11 U.S.C. § 330(b) (setting Chapter 7 trustee's fee at $60).[4]

---

4. Statistics prepared by the Administrative Office of the U.S. Courts show that in the

■ In addition, a Chapter 7 trustee's fiduciary duties may also require him or her to consider the costs and benefits of pursuing a potential estate asset. *In re C. Keffas & Son Florist, Inc.*, 240 B.R. at 473. These considerations also support the Trustee's duty to seek access to the Premises to inspect the Equipment. If the Landlord had allowed the Trustee to conduct an inspection of the Premises, the costs of that inspection would have been slight in relation to the potential benefit of a $7,000 asset for distribution to creditors.

It merits note that the Trustee was not seeking the turnover of the Equipment, or any concession by the Landlord as to its position that it was entitled to claim the value of the Equipment as its own. *See* April 19 Hearing Transcript, p. 14 (Trustee stating that he "implored counsel . . . just to let [him] in."); Trustee's Application Compelling Access to Property of the Estate, ¶ 5 ("Trustee has requested of the movant access to the debtors premises to evaluate the equipment of the business to determine if said equipment would be of value to the bankruptcy estate."). Rather, the Trustee was seeking no more than to conduct an inspection of the Equipment to determine whether any further steps were necessary to satisfy his fiduciary duty. As counsel for the Office of the United States Trustee stated at the April 19 Hearing:

[A]nybody with even a basic understanding of Chapter 7 and the role of a Chapter 7 trustee knows that a trustee has an obligation. Regardless of what you understand a trustee's obligation is elsewhere, you know that he has to go out and look at all the assets and the credi-

tor here knew that the debtor had listed [this] . . . as her assets. They had to have some understanding that the trustee had to come and look at that.

April 19 Hearing Transcript, p. 49. For all of these reasons, the Court concludes that the Landlord and Landlord's Counsel did not respond in good faith to the Trustee's requests.

The Court next considers whether the Landlord and Landlord's Counsel had an opportunity to correct their course and failed to do so. *See, e.g., In re Engel* 246 B.R. 784, 790 (Bankr.M.D.Pa.2000) (where an attorney was negligent in preparing schedules, but had "numerous opportunities to address [the] oversight," his "wanton misconduct" warranted the imposition of sanctions under Section 105); *cf. Interboro Packaging Corp. v. G.P. Plastics Corp.*, 2004 WL 307285 at *1, 2004 U.S. Dist. LEXIS 2282 at *5 (S.D.N.Y.2004) (plaintiff sanctioned under Fed.R.Civ.P. 37 for failure to comply with discovery obligations "despite being given opportunities to correct its course.") As noted above, the record shows that the Landlord and Landlord's Counsel had several weeks in which to reconsider their position, as well as the benefit of the Trustee's submissions, the position of the Office of the United States Trustee, and the views of the Court, but failed to change their course.

Finally, the Court considers whether the Trustee or the Debtor's bankruptcy estate was damaged by incurring unnecessary costs as a result of the objecting party's actions. Here, the Court finds that the Trustee was required to incur unnecessary

---

twelve-month period ending June 30, 2004, more than 21,000 Chapter 7 bankruptcy cases were filed in the Eastern District of New York, and therefore, administered by the Court's panel of Chapter 7 trustees. *See* August 27, 2004, News Release, Administrative Office of the U.S. Courts, at Table F–2. At the

same time, court data shows that, for example, for the years 2002 and 2003, a "Trustee's Notice of Assets" was filed in less than four percent of the Chapter 7 cases filed in this District. Thus, the overwhelming majority of cases administered by Chapter 7 trustees have few or no assets to administer.

attorneys' fees and costs in order to gain access to the Premises to inspect the Equipment. The Debtor's bankruptcy estate proved to have no assets, so those costs were borne by the Trustee. Accordingly, the Trustee was damaged as a result of the actions of the Landlord and Landlord's Counsel.

In sum, the Court concludes that the Trustee has shown that he made a good faith effort to obtain access to the Premises to inspect the Equipment listed in the Debtor's bankruptcy petition; that the objections of the Landlord and Landlord's Counsel were not interposed in good faith; that the Landlord and Landlord's Counsel had an opportunity to correct their course and failed to do so; and finally, that the Landlord's and Landlord Counsel's actions caused damages to the Trustee in the form of increased and unnecessary attorneys' fees and costs.

### The Requirements of Due Process

■■■ " '[D]ue process requires that courts provide notice and opportunity to be heard before imposing *any* kind of sanctions.' " *In re 60 East 80th Street Equities, Inc.*, 218 F.3d 109, 117 (2d Cir.2000) (quoting *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir.1997)).

■■■ Here, the record shows that Landlord and Landlord's Counsel received notice that the Trustee objected to their conduct soon after this bankruptcy case was commenced, and no later than when the Trustee filed the Trustee's Limited Opposition on March 12, 2004. As described above, the issues were also addressed at the March 18 Hearing on the Landlord's Motion for Stay Relief and in the Trustee's Limited Opposition. The Trustee's request for attorneys' fees and costs was presented on or about March 23, 2004, in the Trustee's Motion and at the April 19 Hearing on that Motion. These proceedings gave the Landlord and Land-

lord's Counsel notice of the fact that the Trustee was seeking to recover its attorneys' fees and costs, the grounds for the request, and an opportunity to be heard in response to the Trustee's claims. *See* Trustee Aff., ¶ 2 (citing 11 U.S.C. § 105 and seeking sanctions in the form of attorneys' fees and costs).

The record further shows that the Landlord and Landlord's Counsel had, and availed themselves of, an opportunity to be heard in response to the Trustee's arguments. The Landlord and Landlord's Counsel submitted written opposition to the Trustee's Motion and appeared and were heard at the March 18 Hearing and the April 19 Hearing on the Trustee's Motion. Accordingly, the Court concludes that the Landlord and Landlord's Counsel had notice and an opportunity to be heard in response to the Trustee's Motion, and that the requirements of due process were met.

### The Calculation of Attorneys' Fees and Costs

■■■ The calculation of an award of attorneys' fees and costs is a factual issue to be determined in the Court's discretion. *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 146 (2d Cir.1993), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994). The Court has broad discretion in making such awards. *Luciano v. Olsten Corp.*, 109 F.3d 111, 115–16 (2d Cir.1997). "In this Circuit, attorney's fee awards are determined by calculating the 'lodestar' figure, which is based on the number of reasonable hours expended, multiplied by a reasonable hourly rate." *Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp.*, 215 F.R.D. 60, 62 (E.D.N.Y.2003). "The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputa-

tion.'" *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers,* 34 F.3d 1148, 1159 (2d Cir.1994) (quoting *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). The "community" within which the rate is to be judged is the district in which the court sits. *Polk v. New York State Dep't of Correctional Servs.,* 722 F.2d 23, 25 (2d Cir.1983). The party seeking an award of fees bears the burden of proving the reasonableness and necessity of the hours spent on the task and the hourly rate charged. *Cruz,* 34 F.3d at 1160; *Tokyo Electron Arizona, Inc.,* 215 F.R.D. at 62.

In *Santa Fe Natural Tobacco Co. v. Spitzer,* 2002 WL 498631, 2002 U.S. Dist. LEXIS 5384 (S.D.N.Y.2002), the court found:

> To assess the reasonableness of the time expended by an attorney, the court must look first to the time and work as they are documented by the attorney's records. Next the court looks to "its own familiarity with the case and its experience generally."
>
> . . .
>
> [B]illing judgment must be factored into the equation. If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours
>
> . . . .

*Santa Fe Natural Tobacco Co.,* 2002 WL 498631 at *3, 2002 U.S. Dist. LEXIS 5384 at *7–*10 (citations omitted), *see also id.,* 2002 WL 498631 at *3–*4, 2002 U.S. Dist. LEXIS 5384 at *10–*11 (reviewing factors to be considered in determining fee).

Here, the Trustee is seeking legal fees of $6,987 and expenses of $166.79. Trustee's Supplemental Affirmation, ¶¶ 6, 7. The legal fees billed reflect rates of $325 per hour for the Trustee, $175 per hour for an associate, and $90 per hour for a legal assistant. Trustee's Supplemental Affirmation, Exhibit A. The reasonableness of these hourly rates was not challenged by the Landlord or Landlord's Counsel in their submissions to the Court or at the April 19 Hearing. The Court finds these rates to be reasonable and consistent with rates charged within this District for similar services of lawyers of reasonably comparable skill, experience, and reputation. *See Santa Fe Natural Tobacco Co.,* 2002 WL 498631 at *3–*4, 2002 U.S. Dist. LEXIS 5384 at *7–*10.

The Trustee has also submitted detailed time records reflecting work performed on this matter over approximately five weeks, from March 12, 2004, to April 19, 2004. Trustee's Supplemental Affirmation, Exhibit A. The reasonableness of the amount of work performed was not challenged by the Landlord or Landlord's Counsel in their submissions to the Court or at the April 19 Hearing. The Court finds that the work performed was reasonably required in response to the Landlord's position with respect to access to the Premises and was not excessive, wasteful, or duplicative.

The Trustee further seeks $166.79 for telecopier, overnight express mail, travel, and secretarial overtime expenses. Trustee's Supplemental Affirmation, ¶ 7 and Exhibit B. The reasonableness of these expenses was not challenged by the Landlord or Landlord's Counsel in their submissions to the Court or at the April 19 Hearing. The Court finds that these expenses are reasonable.

### Conclusion

For the reasons stated herein, the Court directs the Landlord and Landlord's Counsel, jointly and severally, to pay $7,253.79 to the Trustee, representing attorneys' fees of $6,987, and costs of $166.79. A separate Order in conformity with this

Memorandum Decision shall be entered simultaneously herewith.