[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 8, 2011
JOHN LEY
CLERK

_____

Nos. 09-15249 & 09-15251

_____

D. C. Docket Nos. 08-01904-CV-ORL-35, 08-01905-CV-ORL-35
Bankruptcy Nos. 07-BK-00075, 07-BK-00996-ABB

In Re: RALPH F. PORTO,

                                                                      Debtor.

_____

RICHARD DELAURO,

                                                            Plaintiff-Appellant-
                                                            Cross-Appellee,

                              versus

RALPH F. PORTO,

                                                            Defendant-Appellee-
                                                            Cross-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(July 8, 2011)

Before TJOFLAT, CARNES and HILL, Circuit Judges.

CARNES, Circuit Judge:

For nearly a quarter of a century Richard DeLauro has been trying to collect a $725,000 judgment debt from Ralph F. Porto. DeLauro's latest efforts not only proved unsuccessful but also resulted in his being ordered to pay more than $15,000 in attorney's fees to Porto as a sanction for what the bankruptcy court viewed as his frivolous objection to the discharge of Porto's debt to him. DeLauro viewed this turn of events in which he as a creditor was ordered to pay his debtor as not only ironic but bitterly so. He has appealed the district court's order affirming the bankruptcy court's sanctions order against him. He also has attempted to appeal the district court's order affirming the discharge of Porto's debt to him, but there is a jurisdictional problem with that aspect of the appeal, as we will discuss.

I.

Porto filed his Chapter 7 bankruptcy proceeding on March 16, 2007. One of the debts he sought to discharge was a personal injury judgment debt he had owed DeLauro since 1985. DeLauro filed a complaint objecting to the discharge of Porto's debt to him on the ground that Porto had fraudulently avoided satisfying that debt since the judgment underlying it was entered 22 years before. Although

2

DeLauro's complaint contained multiple factual allegations of fraud, the only legal remedy it sought was the denial of Porto's discharge pursuant to 11 U.S.C. § 727(a)(5), which forbids discharge where "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities."

The bankruptcy court entered judgment in favor of Porto, denying the relief that DeLauro sought under 11 U.S.C. § 727(a)(5), and it awarded attorney's fees to Porto as a sanction for DeLauro's meritless complaint. DeLauro appealed both orders to the district court. In an order dated May 26, 2009, the district court affirmed the bankruptcy court's judgment on the merits of DeLauro's claims, but it requested further briefing on the issue of whether the bankruptcy court properly granted Porto's motion to sanction DeLauro.[1] In the meantime, Porto filed motions in the district court for additional sanctions and to tax costs against DeLauro for

---

[1]The district court reserved its ruling on the issue of attorney's fees because it had reservations about whether the bankruptcy court's failure to observe the 21-day safe-harbor provision contained in section 57.105(4) of the Florida Statutes precluded the imposition of sanctions. See Fla. Stat. § 57.105(4). Those reservations were resolved when we issued our decision in In re Evergreen Security, Ltd., 570 F.3d 1257 (11th Cir. 2009), affirming a bankruptcy court's award of sanctions against a creditor in an adversarial proceeding pursuant to § 105(a) when the debtor had moved for the sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011 but had failed to provide the creditor with the requisite 21 days notice provided for under that Rule. Id. at 1273. The district court in the present case noted that the notice provision found in Rule 9011 was substantially similar to the one in § 57.105(4), see In re University Centre Hotel, Inc., 323 B.R. 306, 310 (Bankr. N.D. Fla. 2005), and on that basis concluded that the notice provision of § 57.105(4) did not preclude the bankruptcy court from awarding fees pursuant to § 105 of the Bankruptcy Code.

3

pursuing a frivolous appeal from the bankruptcy court. After further briefing, the district court in an order dated September 15, 2009 affirmed the bankruptcy court's judgment awarding attorney's fees to Porto, but it later denied Porto's renewed request for additional sanctions against DeLauro for appealing the bankruptcy court orders because it concluded that those appeals were colorable.

DeLauro filed two separate notices of appeal to this Court on October 15, 2009. One of them appealed the district court's order affirming the bankruptcy court's order overruling his objections and discharging Porto's debt to him. The other one appealed the district court's order affirming the bankruptcy court's award of attorney's fees to Porto as a sanction against DeLauro for filing the objections. Porto cross-appealed the district court's order denying his motion for sanctions and costs against DeLauro for having filed what Porto characterized as frivolous appeals to the district court.

II.

The threshold issue regarding DeLauro's appeal from the district court's decision affirming the bankruptcy court's order rejecting his objections to Porto's discharge is whether we have jurisdiction over that decision. See In re Donovan, 532 F.3d 1134, 1136 (11th Cir. 2008). That jurisdictional issue turns on the timeliness of DeLauro's October 15, 2009 notice of appeal from the district court's

4

decision. Under Federal Rule of Appellate Procedure 4(a)(1), DeLauro had 30 days to file a notice of appeal from the final order resolving the matter. See Fed. R. App. P. 4(a)(1); see also 28 U.S.C. §§ 158(d)(1) and 1291 (giving the courts of appeals jurisdiction over final orders and decisions of district courts in bankruptcy cases).

The timeliness of that October 15, 2009 notice of appeal in turn depends on whether the district court's May 26, 2009 order affirming the bankruptcy court's judgment that there was no merit in DeLauro's objections was a final, which is to say, appealable order. If it was, DeLauro's notice of appeal came three-and-a-half months too late. If, on the other hand, the district court's May 26, 2009 order on the merits of the objections did not become final until September 15, 2009 when that court entered its order resolving the sanctions issue, then DeLauro's October 15 notice of appeal came in time to bring up both of the district court's orders.

A final order is "'one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Jove Eng'g, Inc. v. IRS, 92 F.3d 1539, 1547 (11th Cir. 1996) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633 (1945)). The question is whether an undecided attorney's fees issue means that the litigation on the merits is not ended for final judgment purposes. The answer is that the Supreme Court has established a bright line rule

5

that the issue of attorney's fees is always collateral to the merits, and a decision on the merits, even if the attorney's fees issue remains unresolved, is immediately appealable under 28 U.S.C. § 1291. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 202–03, 108 S.Ct. 1717, 1722 (1988). Thus, "[w]here an order disposes of a party's substantive claims, but does not dispose of claims relating to attorney's fees, the time for appeal of the substantive claims starts to run from the date of the first order unless the district court grants a delay." Fluor Constructors, Inc. v. Reich, 111 F.3d 94, 96 (11th Cir. 1997). Although we have applied Budinich to appeals under 28 U.S.C. § 1291 and appeals from administrative agency decisions, this is the first time we have had occasion to apply that decision to cases appealed to this Court from a district court exercising appellate review of a bankruptcy court's order under 28 U.S.C. § 158(a). See, e.g., Fluor Constructors, 111 F.3d at 96 (appeal from an administrative agency decision); Golub v. J.W. Gant & Assoc., 863 F.2d 1516, 1518 (11th Cir. 1989) (appeal from a district court judgment). There is no reason not to apply Budinich to appeals from the district court in bankruptcy cases.

In Budinich the plaintiff had filed in the district court motions for a new trial and for attorney's fees. Budinich, 486 U.S. at 197; 108 S.Ct. at 1719. The district court issued an order denying the plaintiff's motion for a new trial and finding that

6

he was entitled to attorney's fees, but the court requested further briefing on the issue of the amount of fees it should award. The district court's final order setting the amount of attorney's fees did not come until several months later. After that order was issued, the plaintiff appealed all of the district court's orders, including the earlier one denying his motion for a new trial. The court of appeals concluded that the appeal from the district court's order denying the plaintiff's motion for a new trial was untimely because that order was a final, appealable one despite the fact that the issue of attorney's fees remained unsettled. Id., 108 S.Ct. at 1719.

The Supreme Court affirmed. Id. at 202–03, 108 S.Ct. at 1722. In doing so, the Court explained that "[c]ourts and litigants are best served by the bright-line rule, which accords with traditional understanding, that a decision on the merits is a 'final decision' for purposes of § 1291 whether or not there remains for adjudication a request for attorney's fees attributable to the case." Id. at 202–03, 108 S.Ct. at 1722. The Supreme Court insisted on a bright-line rule because "[t]he time of appealability, having jurisdictional consequences, should above all be clear." Id. at 202, 108 S.Ct. at 1722. In the interests of clarity, the Court determined that "the § 1291 effect of an unresolved issue of attorney's fees for the litigation at hand should not turn upon the characterization of those fees [as part of the relief on the merits] by the statute or decisional law that authorizes them." Id.

7

at 201; 108 S.Ct. at 1721. It stated that "what is of importance here is not preservation of conceptual consistency in the status of a particular fee authorization as 'merits' or 'nonmerits,' but rather preservation of operational consistency and predictability in the overall application of § 1291." Id. at 202; 108 S.Ct. at 1722. "This requires, we think, a uniform rule that an unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final." Id., 108 S.Ct. at 1722.

The circuits that have considered this issue have held that Budinich applies to appeals brought under 28 U.S.C. § 158(d) where, as here, the district court entered a final order on the merits of the underlying dispute but left unresolved the issue of attorney's fees. See In re Pratt, 524 F.3d 580, 585 (5th Cir. 2008) ("[I]rrespective of [the district court's] remand of the issue of attorney's fees, the district court's order affirming the bankruptcy court's denial of sanctions is a final judgment on the merits appealable under § 158(d)."); In re Johnson, 501 F.3d 1163 (10th Cir. 2007) (same); In re Rivera Torres, 432 F.3d 20, 22–23 (1st Cir. 2005) ("The fact that here we are operating under § 158(d) rather than § 1291 makes little difference . . . given the great similarity between an adversary proceeding in bankruptcy and an ordinary civil action." (quotation marks and alteration omitted)); In re Colon, 941 F.2d 242, 245–46 (3d Cir. 1991) (affirming

8

district court's dismissal for lack of jurisdiction because the "order of the bankruptcy court, apart from its allowance of attorneys' fees, was a final appealable decision on the merits within the meaning of 28 U.S.C. § 158(a)").  We agree with our sister circuits that the Budinich rule applies in the bankruptcy context.

We recognize that this Court and others have held that when attorney's fees are awarded pursuant to a contract or are computed as part of the damages award, an order on the merits does not become final and appealable until the attorney's fees issue is resolved.  See, e.g., Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc., 312 F.3d 1349, 1355 (11th Cir. 2002) ("In this Circuit, a request for attorneys' fees pursuant to a contractual clause is considered a substantive issue; and an order that leaves a substantive fees issue pending cannot be 'final.'"); In re Atlas, 210 F.3d 1305, 1308 (11th Cir. 2000) ("[A] bankruptcy court's order is not final for purposes of appellate jurisdiction where the bankruptcy court finds liability for violation of the automatic stay, but defers assessment of damages."); In re Fugazy Exp., Inc., 982 F.2d 769, 776 (2d Cir. 1992) ("In sum, for a bankruptcy court order to be final within the meaning of [28 U.S.C.] § 158(a), the order . . . must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief."); In re Morrell, 880

9

F.2d 855, 856 (5th Cir. 1989) ("The Supreme Court has stated that 'where assessment of damages or awarding of other relief remains to be resolved [judgments] have never been considered to be "final" within the meaning of 28 U.S.C. § 1291.'") (quoting Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 744, 96 S.Ct. 1202, 1206 (1976)).

Along those lines, in In re Atlas we held that an order by the bankruptcy court that decides the merits but defers assessment of damages is not a final, appealable order. In re Atlas, 210 F.3d at 1307–08. In that case, the bankruptcy court's order was not final because the order did not "leave for future resolution only the amount of attorney's fees and costs, but also [left] for assessment punitive and actual damages." Id. at 1308. We distinguished that case from Budinich by noting that "this case concerns an award of damages, not just attorney's fees, which has not yet been assessed." Id. That "distinction [was] crucial to our analysis." Id. Likewise, in MedPartners we held that a district court's order ruling on all of the plaintiff's requests for relief and "closing" a case was not a final appealable order because there remained an issue of contracted-for attorney's fees. MedPartners, 312 F.3d at 1355. As we explained, "the district court explicitly retained jurisdiction to award attorneys' fees," and "[i]n this Circuit, a request for attorneys' fees pursuant to a contractual clause is considered a substantive issue[,]

10

and an order that leaves a substantive fees issue pending cannot be 'final.'" Id. (citing Ierna v. Arthur Murray Int'l, Inc., 833 F.2d 1472, 1476 (11th Cir. 1987)).

This case is unlike MedPartners, In re Atlas, and others of that type because here the unresolved issue of attorney's fees was not part of an award of damages pursuant to contract or otherwise. It was, instead, part of a sanctions award issued in addition to and separate from the merits judgment in the case, and it therefore falls on the Budinich side of the bright line of finality. As a result, DeLauro had 30 days from May 26, 2009 to file his notice of appeal from the district court's order affirming the bankruptcy court's merits decision. See Fed. R. App. P. 4(a)(1). Because his October 15, 2009 notice of appeal missed that deadline by more than three months, we lack jurisdiction to review the district court's judgment affirming the bankruptcy court's order denying DeLauro's objections on the merits. See United States v. Ward, 696 F.2d 1315, 1317 (11th Cir. 1983) ("The timely filing of a notice of appeal is a mandatory prerequisite to the exercise of appellate jurisdiction.").

## III.

We do have jurisdiction over DeLauro's appeal from the district court's September 15, 2009 order affirming the bankruptcy court's award of attorney's fees as a sanction against him, because his October 15, 2009 notice of appeal from

11

that order was timely.

A.

The objections in DeLauro's complaint claimed that Porto could not legitimately explain the loss of assets during the two decades since the judgment had been entered against him and that the unexplained loss of assets had prevented DeLauro from collecting on the judgment. Specifically, DeLauro alleged that Porto had prevented him from collecting on his personal injury judgment by: concealing his interest in a condo at Monmouth Beach, New Jersey by conveying it to his wife; following his divorce, causing a 50 percent share in his home in Montville, New Jersey to be conveyed to a third party "wholly controlled" by him; creating and controlling a corporate entity called L-Falls Realty, LLC, which was designed to conceal his ownership and control of other real property; making pre-petition payments to American Express out of undisclosed assets; and failing to explain how he was able to meet his monthly liabilities, which exceeded his monthly income by almost $2,000 per month.

On September 23, 2008, the bankruptcy court issued an order noting that DeLauro's complaint cited only § 727(a)(5) as its basis for asserting that Porto's discharge should be denied. It found that DeLauro had "strayed far beyond the Complaint in his trial presentation and post-hearing brief." The bankruptcy court

12

stated that DeLauro's evidence and arguments had little to do with a complaint under § 727(a)(5), and his post-hearing brief in fact contained allegations of non-dischargeability under Bankruptcy Code §§ 523(a)(4), 523(a)(5), and 523(a)(6), and asset concealment, asset transfer, and false oaths under Bankruptcy Code §§ 727(a)(2) and 727(a)(4). In other words, the complaint cited the wrong section and subsection of the Code. The bankruptcy court declined to consider the merits of DeLauro's objections on any basis other than as a request for relief under § 727(a)(5) because DeLauro had never amended his complaint. The court further found that Porto's testimony denying DeLauro's allegations was credible and supported by the other evidence.

The bankruptcy court made some other findings about DeLauro's allegations. It found that he had failed to carry his burden of establishing that Porto could not account for significant assets that he formerly owned but that were unavailable for distribution to creditors. See 11 U.S.C. § 727(a)(5). With respect to the alleged gap between Porto's monthly income and expenses, the court observed that allegation did not relate to the loss of an asset but instead to a false oath allegation under § 727(a)(4). With respect to the American Express payments, the bankruptcy court found that to deny Porto's discharge based on § 727(a)(5) would require "leaps of logic," including an assumption that Porto made

13

the payments using cash assets that would have been the property of the estate at the time of his petition and available for distribution to creditors. The bankruptcy court refused to take those leaps, or make those inferences, noting that Porto could have claimed those funds as exempt anyway.

According to the bankruptcy court's findings, DeLauro's contention that Porto inexplicably lost his interest in the Montville home also could not form the basis of a § 727(a)(5) claim because that interest was not "lost." In fact, Porto's interest in the Montville home was an asset that was liquidated by the Trustee. Likewise, the court found that Porto's interest in the Monmouth Beach condo was not lost, but was transferred to his wife in a pre-petition property settlement agreement. And the bankruptcy court found that even assuming Porto had transferred the property to his wife in 1984 in order to prevent DeLauro from collecting on his judgment, that alleged conduct related to an unpleaded fraudulent transfer recovery cause of action instead of to a § 727(a)(5) unexplained loss of assets cause of action. As for DeLauro's contention that Porto used L-Falls Realty, LLC, to hide income and assets, the court found those allegations also related to a fraudulent transfer recovery cause of action and not to a § 727(a)(5) cause of action. Furthermore, DeLauro had failed to establish that Porto had an ownership interest in L-Falls or its assets and real estate transactions.

14

Before the bankruptcy court denied DeLauro's objections, Porto filed a motion requesting that the court award him attorney's fees and costs for defending against DeLauro's complaint, which Porto contended lacked any support in law or fact. Porto brought his motion for attorney's fees under section 57.105(1) of the Florida Statutes,[2] which provides for an award of fees where the losing party or his attorney knew or should have known that his claim lacked factual or legal merit. See Fla. Stat. § 57.105(1). Alternatively, he sought attorney's fees as sanctions under § 105 of the Bankruptcy Code.[3] See 11 U.S.C. § 105(a). That Code provision permits bankruptcy courts to impose sanctions for conduct in violation of Bankruptcy Rule 9011, which authorizes them to impose sanctions where a signed pleading is frivolous or is filed in bad faith. In re Mroz, 65 F.3d 1567, 1572 (11th Cir. 1995) ("Sanctions under Bankruptcy Rule 9011 are warranted when (1) the papers are frivolous, legally unreasonable or without factual foundation, or (2) the pleading is filed in bad faith or for an improper purpose.").

In the same order in which it denied DeLauro's complaint and granted Porto's discharge, the bankruptcy court also granted Porto's motion for attorney's

---

[2] The bankruptcy court observed that it could award attorney's fees pursuant to § 57.105(1) in an adversary proceeding, citing In re Wille, 333 B.R. 891, 893 (Bankr. M.D. Fla. 2005). DeLauro does not contest that, but we have no need to pass on the correctness of that implicit concession. See infra, n.8.

[3] Section 105 provides that: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

fees, finding that DeLauro's complaint objecting to Porto's discharge lacked any factual or legal merit, that DeLauro knew or should have known as much, and that the adversary proceeding was brought in bad faith and therefore constituted unreasonable and vexatious litigation that was designed only "to harass [Porto] and delay his bankruptcy case."

B.

The district court affirmed the bankruptcy court's award of attorney's fees based on that court's power to take any action "to prevent an abuse of process." See 11 U.S.C. § 105(a). This power includes the authority to impose sanctions, including an award of attorney's fees, if a party violates a court order or rule. In re Evergreen Sec., Ltd., 570 F.3d 1257, 1273 (11th Cir. 2009). A bankruptcy court also has the authority to impose sanctions based on a finding of bad faith. Id.; In re Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1304 (11th Cir. 2006). Bad faith exists where an attorney "'knowingly or recklessly raises a frivolous argument.'" In re Evergreen Sec., Ltd., 570 F.3d at 1273 (quoting In re Walker, 532 F.3d 1304, 1309 (11th Cir. 2008)).[4] The district court found that the bankruptcy court's finding of

---

[4]The Evergreen opinion also stated that bad faith exists where an attorney "argues a meritorious claim for the purpose of harassing an opponent." In re Evergreen Sec., Ltd., 570 F.3d at 1273. That additional statement was dicta in Evergreen, and in the opinion of this Court that Evergreen quoted for that statement, see In re Walker, 532 F.3d at 1309, and in the opinion of this Court that Walker quoted for it, see Byrne v. Nezhat, 261 F.3d 1075, 1121 (11th Cir. 2001), and in the opinion of this Court that Byrne quoted for it, see Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998).

16

bad faith was not clearly erroneous and that its award of fees was not an abuse of discretion based on its own "review of the record and for the reasons cited . . . in [the district court's order] upholding the Bankruptcy Court's substantive decision."[5]

Our standard of review is abuse of discretion. See Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1205 (11th Cir. 2001). An abuse of discretion exists where a court applies the wrong legal standard, makes clearly erroneous findings of fact, or bases its decision on a clear error in judgment. In re Sunshine Jr. Stores, Inc., 456 F.3d at 1304; United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc) ("[W]hen employing an abuse-of-discretion standard, we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard."). A finding of bad faith is a finding of fact that we review only for clear error. See Maritime Management, Inc. v. United States, 242 F.3d 1326, 1331 (11th Cir. 2001) (citing Long v. Florida, 805

---

[5]At the same time it affirmed the bankruptcy court's denial of DeLauro's objections to Porto's discharge, the district court denied Porto's motion requesting that the court add another sanction award against DeLauro for appealing the bankruptcy court's rejection of his objections to the discharge. There is some tension between those two rulings of the district court. If, as the district court affirmed, DeLauro filed his objections in bad faith and with the intent to harass Porto, it is difficult to understand how his appeal from the bankruptcy court's rejection of those objections could have been "colorable," as the district court found in denying Porto's motion for more sanctions. We need not concern ourselves with that apparent inconsistency, however, because we independently examine the factual and legal determinations of the bankruptcy court. See In re Issac Leaseco, Inc., 389 F.3d 1205, 1209 (11th Cir. 2004); In re St. Laurent, 991 F.2d 672, 675 (11th Cir. 1993).

F.2d 1542, 1550 (11th Cir. 1986), rev'd on other grounds, 487 U.S. 223, 108 S.Ct.

2354 (1988)). "While bad faith is the key to unlocking the court's inherent power,

a court must do more than conclude that a party acted in bad faith; it should make

specific findings as to the party's conduct that warrants sanctions." Byrne v.

Nezhat, 261 F.3d 1075, 1123 (11th Cir. 2001) (quotation marks and citation

omitted).[6]

In Byrne, although we affirmed a district court's imposition of sanctions

against an attorney, id. at 1115–17, we reversed its sanctions against the plaintiff

herself because the court had failed to make sufficiently specific factual findings to

support a finding that the plaintiff had acted in bad faith, id. at 1121–27. The

district court in Byrne found that the plaintiff's attorney had brought a negligence

claim long after the statute of limitations had expired, he had claimed that the

limitations period was tolled by fraudulent acts without specifying what those

fraudulent acts were, he had alleged racketeering activity without any evidentiary

basis, he had renewed those frivolous allegations in an amended complaint, and he

---

[6]We recognize that the bankruptcy court in this case based its award of attorney's fees as a sanction on its statutory powers under § 105(a) of the Bankruptcy Code, whereas Byrne dealt with a district court's inherent authority to sanction misconduct. However, we agree with the Tenth Circuit "that § 105 [was] intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in [Chambers v. NASCO, Inc., 501 U.S. 32, 44–45, 111 S.Ct. 2123, 2133 (1991)]," in which the Supreme Court recognized the inherent power of a federal district court to sanction "conduct which abuses the judicial process." In re Courtesy Inns, Ltd., 40 F.3d 1084, 1089 (10th Cir. 1994).

18

had failed to inform his client that he was bringing a RICO claim. Id. at 1121–22. The district court inferred from those findings about the attorney's conduct that he had acted in bad faith, and we affirmed its imposition of sanctions on the attorney. Id. at 1117.

The imposition of sanctions on the Byrne plaintiff herself was another matter. The district court had based that part of its sanction award on the same misconduct of her attorney that had led to the award against him. Id. at 1124. While a client may be made to suffer litigation losses because of her attorney's missteps, the Byrne decision rejects the notion that an innocent client must also suffer sanctions because of misconduct by her attorney that is not fairly attributable to her. Without more, the rule that the sins of the lawyer are visited on the client does not apply in this context, and a court must specify conduct of the plaintiff herself that is bad enough to subject her to sanctions. See id. at 1124 (concluding that the finding of bad faith on the part of the plaintiff herself was clearly erroneous, and the district court's "failure to specify [the plaintiff's] sanctionable conduct render[ed] us unable to affirm.").

Those principles prevent us from affirming the award of sanctions against DeLauro in this case. After referring to its legal authority to impose sanctions, this is the entire explanation of the bankruptcy court for its decision to sanction

19

DeLauro:

> The Plaintiff's allegations have no factual or legal merit. He knew or should have known his Complaint has no factual or legal basis. This adversary proceeding was not brought in good faith and constitutes unreasonable, vexatious litigation.
>
> . . .
>
> The Plaintiff did not bring this action in good faith, but brought it to harass the Debtor and delay his bankruptcy case.

Without further elaboration, the bankruptcy court concluded that "[t]he Debtor is entitled to an award of his reasonable attorney's fees." That is not enough.

We reiterate what we have said before: a conclusory finding of bad faith is not sufficient to withstand appellate review. See Byrne, 261 F.3d at 1123 ("Unless the evidence on the issue of bad faith is uncontroverted, a district court should examine a party's conduct and make findings on that issue."); Rothenberg v. Sec. Mgmt. Co., 736 F.2d 1470, 1472–73 (11th Cir. 1984) (remanding for factual findings as to bad faith because "bald assertions provide no meaningful basis for this court to review the ultimate finding of 'bad faith.'"); cf. In re Sunshine Jr. Stores, Inc., 456 F.3d at 1304–05 (affirming award of sanctions pursuant to bankruptcy court's inherent powers where the court's "sanctions order contained a detailed chronology of [the creditor's] repeated failure to respond to court orders, its failure to appear before the court when ordered, and its refusal to provide

20

discovery pursuant to the court's [order]").

Not only are the bankruptcy court's findings inadequate to support sanctions against DeLauro, but there is nothing in the record to support any findings about what DeLauro personally knew or did not know before his attorney filed the complaint containing the objections to Porto's discharge. The court seems to have reasoned that because the claims contained in DeLauro's complaint were not properly pleaded or were not proven at the hearing, DeLauro — not his attorney, but DeLauro personally — must have made them unreasonably, in bad faith, or to harass the defendant. That is, however, a leap in logic as large as any the court declined to make in favor of the allegations in the complaint. It equates lack of merit with bad faith, a fallacy that would lead to the conclusion that every losing party had litigated in bad faith. In the past we have reiterated the Supreme Court's warning that:

> [I]t is important that courts not engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.

Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181–82 (11th Cir. 2005) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421–22, 98 S.Ct. 694, 700 (1978)).

21

There is another problem here. Apart from its failure to specify the conduct or knowledge of DeLauro himself that warranted a finding of bad faith on his part, much of the bankruptcy court's disapproving discussion of the objections to discharge emphasize that particular objections were brought under the wrong section or subsection of the Bankruptcy Code. That emphasis points away from a finding that DeLauro was culpable. The failure to cite the proper legal authority for a proposition is a failure of legal pleading; at most it is bad lawyering, and DeLauro was not the lawyer. The lawyer responsible for pleading all of the objections, and for all the errors of pleading that the court identified, escaped any sanctions, while the client who may have suffered an adverse judgment in part because of the pleading errors got sanctioned. That anomaly requires justification, and there is none in the court's order. We said in Byrne that "[s]anctionable conduct by a party's counsel does not necessarily parlay into sanctionable conduct by a party." Byrne, 261 F.3d at 1123 (citing Donaldson v. Clark, 819 F.2d 1551, 1557 n.6 (11th Cir. 1987)). All the more, unsanctioned conduct by a party's counsel should not be parlayed into a sanction against the party.

Without specific factual findings as to what constituted bad faith on DeLauro's part, the bankruptcy court characterized the filing of the complaint as a "final attempt to get his proverbial 'pound of flesh'" from Porto. As a matter of

22

fact, the judgment debt in this case resulted from a personal injury lawsuit DeLauro

filed against Porto involving a botched hair transplant. All these years later

DeLauro might be more aptly described as still mourning his ravished locks

instead of seeking a pound of flesh.[7] In any event, we must remand this case to the

bankruptcy court so that it can either flesh out its reasons for sanctioning DeLauro

or decide that he is not to be sanctioned.[8]

IV.

Our decision on DeLauro's appeal disposes of Porto's cross-appeal of the

---

[7]Compare Alexander Pope, "The Rape of the Lock," Canto V, lines 141–42 (1712) ("Then cease, bright nymph! to mourn the ravish'd hair / Which adds new glory to the shining sphere!"), with William Shakespeare, The Merchant of Venice, Act IV, Scene I, lines 100–01 (1600) ("The pound of flesh, which I demand of him, / Is dearly bought; 'tis mine and I will have it.").

[8]Because the district court sustained the bankruptcy court's award of attorney's fees as sanctions pursuant to § 105(a) of the Bankruptcy Code, it declined to address the alternative legal basis the bankruptcy court cited for the award, which was § 57.105(1). See Fla. Stat. § 57.105(1) (providing for an award of sanctions where the court finds that a losing party or his attorney knew or should have known that his claim "[w]as not supported by the material facts necessary to establish the claim or defense"). We have not, however, been cited to any controlling authority permitting a bankruptcy court to award sanctions under that state statute in this type of proceeding.

Even assuming that a bankruptcy court sitting in Florida may award sanctions under § 57.105, the record indicates that Porto did not comply with the safe harbor provision contained in that statute. Section 57.105(4) provides that "[a] motion by a party seeking sanctions under this section must be served but may not be filed with or presented to the court unless, within 21 days after service of the motion, the challenged . . . allegation . . . is not withdrawn or appropriately corrected." Fla. Stat. § 57.105(4). Porto served DeLauro with his motion for attorney's fees as sanctions on April 30, 2008, and his motion was filed with the bankruptcy court on the same day. Therefore, Porto did not provide DeLauro an opportunity to amend or withdraw his objections within 21 days before he filed the motion for sanctions, as the statute requires. Moreover, we have no reason to believe that § 57.105 does not require the same foundation of specific findings that Bankruptcy Code §105(a) does.

23

district court's order denying his motions for sanctions and to tax costs. Porto asked the district court to award sanctions against DeLauro under Bankruptcy Rule 8020 for costs, including attorney's fees, associated with DeLauro's appeals from the bankruptcy court's orders. See Fed. R. Bankr. P. 8020. The district court denied Porto's motions, concluding that DeLauro's appeals to it were colorable.

We review a court's decision about whether to impose sanctions only for an abuse of discretion. In re Mroz, 65 F.3d at 1571. The Advisory Committee Note to Rule 8020 references Federal Rule of Appellate Procedure 38 and states that the authority to impose sanctions is the same for district courts sitting as appellate courts, bankruptcy appellate panels, and courts of appeals. Fed. R. Bankr. P. 8020 advisory committee's note. The Supreme Court has stated that "Rules 11 and 38 are better read together as allowing expenses incurred on appeal to be shifted onto appellants only when those expenses are caused by a frivolous appeal, and not merely because a Rule 11 sanction upheld on appeal can ultimately be traced to a baseless filing in district court." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 407, 110 S.Ct. 2447, 2462 (1990). DeLauro's appeal to the district court of the order awarding sanctions against him was not frivolous, as our decision vindicating that appeal establishes.

As for DeLauro's appeal to the district court of the denial of his objections

24

to the discharge, we lack the jurisdiction to decide the merits of that appeal, but we can and do decide that the appeal was colorable (non-frivolous enough) to prevent the district court's denial of sanctions against DeLauro from being an abuse of discretion. We cannot say that in denying sanctions for that appeal of the merits, the district court "made a clear error of judgment, or . . . applied the wrong legal standard." Frazier, 387 F.3d at 1259.

V.

DeLauro's appeal from the district court's judgment affirming the bankruptcy court's judgment on the merits is DISMISSED for lack of jurisdiction. The judgment of the district court on the issue of attorney's fees is VACATED and the case is REMANDED for proceedings consistent with this opinion. The district court's judgment denying sanctions for the appeal to it is AFFIRMED.