**IN RE: Armando Adames RIVAS, Debtor.**

**Armando Adames Rivas, Plaintiff-Appellant,**

v.

**The Bank of New York Mellon, Defendant-Appellee.**

No. 16-13199-G

United States Court of Appeals, Eleventh Circuit.

Date Filed: 01/05/2017

Armando Adames Rivas, Pro Se

Nancy M. Wallace, Akerman, LLP, Tallahassee, FL, Andrea Stone Hartley, Akerman, LLP, Miami, FL, William ·Patrick Heller, Akerman, LLP, Fort Lauderdale, FL, Adam Grant Schwartz, Akerman, LLP, West Palm Beach, FL, Jason Andrew Weber, Sirote & Permutt, PC, Fort Lauderdale, FL, for Defendant-Appellee

## ORDER:

Armando Rivas executed a promissory note and mortgage for a home loan on a property located in Boynton Beach, Florida. The note and mortgage were ultimately transferred to The Bank of New York Mellon ("BNYM"). On June 4, 2012, BNYM filed a foreclosure action in state court regarding this property. On the eve of the foreclosure trial, Armando Rivas filed his fourth *pro se* petition for Chapter 13 bankruptcy with the bankruptcy court. BNYM filed a motion to dismiss the bankruptcy case, arguing, in part, that the petition was not filed in good faith.

At the subsequent bankruptcy· hearing, Rivas stated that his goal in filing the bankruptcy petition was to obtain a loan modification. After hearing arguments from both sides, the bankruptcy court explained that it was granting the motion to dismiss for three reasons. First, the bankruptcy court noted that Rivas had three other bankruptcy filings in a short time, which indicated that this petition was not taken in good faith. Second, the bankruptcy court explained that Rivas did not have the ability to reorganize under Chapter 13 because he had a negative monthly disposable income. Further, the bankruptcy court explained that this was really a dispute between Rivas and BNYM that needed to be resolved in state court, and if Rivas was unhappy with the state court rulings in his case, then he could appeal. Third, the bankruptcy court explained that Rivas's goal of obtaining a loan modification is not proper grounds for filing a bankruptcy petition, that a bankruptcy petition should not be filed for the purposes of trying to achieve mediation, and that Rivas could obtain a loan modification in state court. Accordingly, based on Rivas's previous filing history, the bankruptcy court dismissed his case "with prejudice as to the filing of any bankruptcy case ... by [Rivas] for two years[.]" Rivas appealed the bankruptcy court's order to the district court, arguing that the bankruptcy court's ruling violated his constitutional rights and that the bankruptcy court judge acted with "prejudice" and "bias" by dismissing his case.

The district court affirmed the bankruptcy court's order, concluding that the bankruptcy court did not err in finding that the bankruptcy petition was filed in bad faith. Further, the district court noted that the bankruptcy court's conclusion that Rivas could not reorganize under Chapter 13 because he had a negative monthly income was an additional rationale for dismissal of the case. Rivas filed a notice of

appeal and a motion to proceed on appeal *in forma pauperis* ("IFP"). The district court denied his IFP motion, noting that Rivas had failed to explain the discrepancy between his sworn statement in his bankruptcy filing as it related to his level of monthly income and the affidavit he submitted in relation to his IFP motion. Rivas now seeks IFP status in this Court. In his IFP motion, he maintains that the district court and bankruptcy court acted with "prejudice" and "bias" by dismissing his case, and he believes that "if [he] was Caucasian due to white privilege they would have not done what was done to [him]."

A movant seeking leave to proceed IFP on appeal must show (1) that he is a pauper, and (2) that the appeal presents non-frivolous issues. *See* 28 U.S.C. § 1915(a)(1), (e)(2)(B). This Court has maintained "that proceeding [IFP] is a privilege, not a right, and permission to so proceed is committed to the sound discretion of the court." *Camp v. Oliver*, 798 F.2d 434, 437 (11th Cir. 1986). However, a person need not be totally destitute or reduce himself to a public charge in order to proceed IFP. *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004). Rather, "an affidavit will be held sufficient if it represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents."[1] *Id.* at 1306. In determining whether the appellant has satisfied the poverty requirement, a court must compare the appellant's assets and liabilities. *Id.* at 1307-08.

Rivas's financial affidavit submitted with his IFP motion to this Court indicates that his monthly income is $3,500 and his monthly expenditures are $4,599. Thus, on its face, the affidavit is sufficient to indicate that he is unable to pay for the court fees and costs, as his monthly expenditures exceed his income. *Id.* at 1306. However, as the district court explained when denying his IFP motion below, Rivas's purported monthly income of $3,500 submitted in connection with this IFP motion conflicts with his affidavit filed in connection with the bankruptcy proceeding, which indicated that his income was $ 10,000 a month. Thus, there is some question as to whether he would qualify as a pauper for purposes of IFP status.

Nevertheless, assuming, *arguendo*, that Rivas is a pauper for purposes of § 1915, his motion for IFP status is due to be denied because any appeal would be frivolous. *See* 28 U.S.C. § 1915(e)(2)(B) (requiring the court to dismiss a case if the court determines it is frivolous). "[A]n action is frivolous if it is without arguable merit either in law or fact." *Napier v. Preslicka*, 314 F.3d 528, 531 (11th Cir. 2002) (quotations omitted). In making this determination, "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (quotations omitted).

"In a bankruptcy case, this Court sits as a second court of review and thus examines independently the factual and legal determinations of the bankruptcy court." *In re Brown*, 742 F.3d 1309, 1315 (11th Cir. 2014) (quotations omitted). "[W]here a district court affirms a bankruptcy court's order, as the district court did here, this Court reviews the bankruptcy court's decision." *Id.* Specifically, this Court reviews legal conclusions *de novo* and the bank-

---

1. The appellate docketing fee required by 28 U.S.C. § 1913 is $500, in addition to the $5 district court appellate filing fee required by 28 U.S.C. § 1917. *See* 11th Cir. Internal Operating Procedure, *Payment of Fees*, following Fed. R. App. P. 3.

ruptcy court's factual determinations for clear error. *Id.* Findings of fact are not clearly erroneous unless, in light of all the evidence, this Court is left with the "definite and firm conviction" that a mistake has been made. *In re Int'l Pharm. & Disc. II, Inc.*, 443 F.3d 767, 770 (11th Cir. 2005).

Pursuant to 11 U.S.C. § 1325(a)(3), a Chapter 13 bankruptcy plan must be proposed in good faith. A district court has the discretionary authority to dismiss a Chapter 13 bankruptcy case if the court finds that the petition was not filed in good faith. *In re Waldron*, 785 F.2d 936, 939, 941 (11th Cir. 1986); *see also In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988) (explaining, in the context of Chapter 11 proceedings, that a bankruptcy case may be dismissed for cause if not filed in good faith). This Court has explained that broadly defined "good faith" means "that the petition must be filed with the honest intent and genuine desire to utilize the provisions of Chapter [13] for its intended purpose—to effectuate ... reorganization—and not merely as a device to serve some sinister and unworthy purposes of the petitioner." *Waldron*, 785 F.2d at 939 (quotations omitted). However, there is no particular test for determining whether a petition is filed in bad faith. *Piccadilly*, 849 F.2d at 1394. Instead, this Court has held that "the courts may consider any factors which evidence an intent to abuse the judicial process and the purposes of the reorganization provisions, or in particular, factors which evidence that the petition was file to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *Id.* (quotations omitted).

"A bankruptcy court's determination whether a chapter 13 plan has been proposed in good faith is a finding of fact reviewable under the clearly erroneous standard." *Brown*, 742 F.3d at 1315. This Court has cautioned that it should be reluctant to second-guess such findings because "[t]he bankruptcy judge is in the best position to evaluate good faith and weigh the relevant ... factors, as it sits as the finder of fact and can best assess motives and credibility." *Id.*

Further, the bankruptcy court has the discretionary authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). "A bankruptcy court has the authority to impose sanctions based on a finding of bad faith." *In re Porto*, 645 F.3d 1294, 1303 (11th Cir. 2011). This Court reviews other the imposition of sanctions, pursuant to § 105(a), for an abuse of discretion. *Id.* "An abuse of discretion exists where a court applies the wrong legal standard, makes clearly erroneous findings of fact, or bases its decision on a clear error in judgment." *Id.*

In this case, the bankruptcy court's finding of bad faith was supported by the record. First, Rivas admitted at the bankruptcy court hearing that his goal in filing the bankruptcy petition was to obtain a loan modification. This alone demonstrates that his petition was filed in bad faith, as he did not have an "honest intent and genuine desire to utilize the provisions of Chapter [13] for its intended purpose—to effectuate ... reorganization." *Waldron*, 785 F.2d at 939 (quotations omitted). Further, this Court has noted that "[t]he bankruptcy laws are intended as a shield, not as a sword" to be used to try to avoid an enforceable contract. *Id.* at 940. Moreover, Rivas's timing in filing the bankruptcy petition shortly before the trial in the state court foreclosure action was to commence evidenced an intent to "delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *Piccadilly*, 849 F.2d at 1394. Additionally, as noted by the bankruptcy court, Rivas's filing of

three other bankruptcy petitions in a short period of time was additional evidence of bad faith. *See In re Kitchens*, 702 F.2d 885, 889 (11th Cir. 1983) (explaining that, in considering bad faith, courts may look to "the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors").

With regard to the bankruptcy court's decision to exercise its discretionary authority under § 105(a) to bar Rivas from filing any future bankruptcy petitions for two years, there is nothing to indicate that this was an abuse of discretion. Although this Court has not specifically addressed the district court's discretionary authority under § 105(a) to bar a debtor from filing future bankruptcy petitions, given the bankruptcy court's findings concerning Rivas's history of serial filings and that this was his fourth bankruptcy petition in a very short time period, there was a reasonable basis to support the bankruptcy court's decision, such that it cannot be said that the district court abused its discretion. *Porto*, 645 F.3d at 1303.

Finally, there is nothing in the record that supports Rivas's contentions in his IFP motion that the district court or bankruptcy court acted with prejudice or bias or dismissed his case based on his race. Thus, because any appeal in this case would be frivolous, his motion for IFP status is DENIED.