[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13030
Non-Argument Calendar
_____

D.C. Docket No. 9:17-cv-81289-RLR,
Bkcy No. 9:14-bkc-28923-PGH

In Re:  KIM C. CRAWFORD,

Debtor.

_____

BRETT A. ELAM,

Plaintiff - Appellant,

versus

BANK OF NEW YORK,

Defendant – Appellee,

KIM C. CRAWFORD,

Intervenor.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 19, 2019)

Before BRANCH, GRANT, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Brett Elam appeals portions of the bankruptcy court's order sanctioning him for misconduct in the Chapter 11 proceeding below. As debtor's counsel, Elam sought court approval for compensation exceeding $40,000. But before the court ruled on those fees, the debtor paid $34,400 to Elam's trust account, labeling the "purpose" of that payment as "attorney's fees." When a skeptical creditor asked about the transfer, Elam insisted that he was holding this money in trust until the court approved his fees. In truth, however, Elam began tapping into those funds for personal use without waiting for court approval. Worse still, he flouted multiple court orders directing him to prove that these funds remained in the trust account. As a result, the bankruptcy court ordered Elam to pay the creditor's attorney's fees and suspended him from practicing before it for one year. Elam does not contest either of those sanctions.

Still, the bankruptcy court went further and sanctioned Elam for misappropriating his client's funds. It also found that he made false statements by

2

describing the "purpose" of the $34,400 payment as "attorney's fees." And in so doing, the bankruptcy court levied certain penalties that do not reflect the record or serve the targeted purpose of compensating the debtor for Elam's misconduct. We therefore affirm the bankruptcy court's order in part, vacate it in part, and remand for further proceedings.

## I.

## A.

Kim Crawford filed a voluntary petition for Chapter 11 bankruptcy in August 2014. Soon after, she sought to employ Elam as counsel to the debtor-in-possession. The bankruptcy court approved that request, thereby authorizing Elam to advise Crawford in negotiations with creditors, represent her before the bankruptcy court, and prepare a plan of reorganization. A few months in, Elam applied for interim compensation in the amount of $14,350, which the bankruptcy court also approved.

But more than two years after initiating the bankruptcy proceeding, Crawford had yet to confirm of a plan of reorganization. In October 2016, she filed her Fourth Amended Plan of Reorganization, to which one of her creditors—The Bank of New York (BONY)—objected. Apparently expecting confirmation over that objection, Elam also filed an application for final compensation in the

amount of $46,790.  The bankruptcy court, however, denied confirmation and thus deferred ruling on Elam's request for compensation.

Following that denial, Crawford filed her Monthly Operating Report for March 2017, detailing her monthly cash receipts and disbursements.  Among other things, the report listed a check payment to "Brett Elam" for "Attorney's Fees" in the amount of $34,400.  That caught BONY's attention, seeing as the bankruptcy court had not approved any attorney's fees since its order allowing interim compensation.  When BONY's counsel asked Elam about the check, he stated: "she wrote it to me and it is held in trust.  I had it for the confirmation hearing.  It hasn't been disbursed.  I just had it in anticipation of confirmation.  I am still holding it."

Not willing to take Elam at his word, BONY's counsel asked him for proof that the $34,400 remained in his trust account.  When Elam kept dodging those requests, BONY raised the issue with the bankruptcy court for the next status hearing.  At the status hearing, Elam reiterated that this "money was put there," meaning his trust account, "based upon a pending confirmation hearing."  The bankruptcy court then ordered Elam to produce copies of his trust account statements showing that the $34,400 payment "has always been maintained in" the trust account.

4

Elam failed to comply, leading the bankruptcy court to once again order him to produce the trust account information. And when Elam continued to drag his feet, BONY moved for an order to show cause why he should not be held in contempt and sanctioned. About a month later, however, Crawford consented to the dismissal of her bankruptcy case. In response, the bankruptcy court dismissed the case but agreed to rule on the trust account issue and thus retained jurisdiction to enforce any pending orders.

At the show cause hearing, Elam conceded that he removed funds from the trust account without court approval. He testified that if he had told the court that those funds were "always" in his trust account, then "it was incorrect" and that he would "stand before the Court and take whatever punishment I need." When the bankruptcy court asked about the reason for "the misappropriation," Elam stated, "that was in an emergency situation, and they were put back." The bankruptcy court pressed Elam to explain "where in the ethical rules there's any provision that says, I can take a client's funds out of [a] trust account based on an emergency," to which Elam responded, "[t]here is none." Instead, Elam asserted that "the funds were there, and my wife had surgery, and I needed to use the funds to live for a bit." He further testified that he did not tell Crawford about his use of those funds.

B.

5

After the show cause hearing, the bankruptcy court sanctioned Elam for three reasons. *First*, Elam "willfully violated multiple court orders"—namely, the court's discovery orders requiring him to produce his trust account statements. *Second*, Elam "committed professional misconduct" by failing to keep his client's funds separate from his own property, and by spending those funds for personal reasons, in violation of Florida Bar regulations. *Third*, Elam "made false representations to the Court by listing 'Attorney's Fees' as the 'Purpose or Description' of the $34,400.00 check" that Crawford transferred to Elam's trust account. The bankruptcy court found that the real purpose of these funds was to facilitate plan confirmation—not to compensate Elam for his legal services.

Given these findings, the bankruptcy court imposed civil contempt sanctions against Elam, requiring him to compensate BONY and Crawford "for actual losses they sustained" as a result of Elam's misconduct. To that end, the bankruptcy court ordered Elam to pay BONY $8,557.50 as compensation for the attorney's fees that BONY incurred in litigating the trust account issue. The bankruptcy court also required Elam to pay Crawford $34,400—representing the amount that was transferred to Elam's trust account. In addition, the bankruptcy court ordered Elam to return any of the $14,350 in attorney's fees that it had awarded on an interim basis—to the extent that Crawford had paid those fees separate and apart from the

6

$34,400 payment.  Finally, the bankruptcy court suspended Elam from practicing before it for one year.

Elam filed a motion for reconsideration, which the bankruptcy court denied. Elam argued that the $34,400 payment to his trust account was, in fact, meant to compensate him for legal services.  Although Elam acknowledged that he should have waited for court approval before he withdrew these funds from the trust account, he insisted that he did not misappropriate them, seeing as they were earned attorney's fees.  The bankruptcy court, however, reiterated its finding that Elam held these funds in trust "for confirmation of the Debtor's plan, not for attorney's fees."  Elam then appealed to the district court, which affirmed the bankruptcy court's order.

On appeal to this Court, Elam does not contest the attorney's fees awarded to BONY or his one-year suspension.  He agrees that "he acted inappropriately toward his opposing counsel, failed to produce documents and was appropriately sanctioned in those regards."  Instead, Elam disputes that he made false representations to the bankruptcy court and that he committed professional misconduct by misappropriating client funds.  Elam also argues that—notwithstanding these sanctions—he still deserves compensation for the reasonable value of the legal services that he provided to Crawford.[1]

---

[1] After Elam appealed the bankruptcy court's sanctions order to the district court, Crawford filed

II.

"In a bankruptcy appeal, this Court 'sits as a second court of review and thus examines independently the factual and legal determinations of the bankruptcy court and employs the same standards of review as the district court.'" *In re Yerian*, 927 F.3d 1223, 1227 (11th Cir. 2019) (quoting *In re Hood*, 727 F.3d 1360, 1363 (11th Cir. 2013)). Here, that means we must determine "whether the sanctioning court abused its discretion." *In re Mroz*, 65 F.3d 1567, 1571 (11th Cir. 1995). "In determining whether the court has abused its discretion we ask whether it applied the wrong legal standard or made findings of fact that are clearly erroneous." *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006) (internal quotation marks, alterations, and citation omitted); *see also In re Porto*, 645 F.3d 1294, 1303 (11th Cir. 2011) (explaining that an abuse of discretion occurs when "a court applies the wrong legal standard, makes clearly erroneous findings of fact, or bases its decision on a clear error in judgment").

---

a motion for attorney's fees, arguing that Elam's appeal was frivolous. Although the district court largely agreed with Crawford's position, it nonetheless denied her motion without prejudice out of "an abundance of caution," given that it was not certain that Crawford could obtain attorney's fees as an intervenor (as opposed to an appellee). Dist. Ct. Dkt. 40, at 16. Elam seeks to appeal the district court's view that his appeal was frivolous, but the district court ruled in his favor. We therefore decline to exercise jurisdiction to decide that issue. *See Keating v. City of Miami*, 598 F.3d 753, 760 (11th Cir. 2010) (explaining that "a party normally may not appeal from a favorable judgment"); *United States v. Rivera*, 613 F.3d 1046, 1052 (11th Cir. 2010) ("Most circuits have declined to exercise jurisdiction over challenges to naked findings of fact about even attorney misconduct."). We also deny Crawford's pending motion for appellate attorney's fees and costs.

III.

A.

The bankruptcy court clearly erred in finding that Elam made false representations by describing the "Purpose" of Crawford's $34,400 payment to the trust account as "Attorney's Fees." The record shows that Crawford, Elam, and even BONY's counsel all understood that this payment was, in fact, intended to compensate Elam for his legal services. Of course, Elam should not have withdrawn those funds from the trust account unless and until the bankruptcy court approved them as attorney's fees. Section 330 of the Bankruptcy Code vests bankruptcy courts with the authority to award "reasonable compensation for actual, necessary services rendered by" counsel employed by a debtor-in-possession. 11 U.S.C. § 330(a)(1)(A). But the fact that Elam prematurely tapped into those funds does not mean that he lied when he described their purpose as attorney's fees.

In the bankruptcy court's telling, "the specific purpose for which the funds were being held in the trust" by Elam "was for confirmation of the Debtor's plan, not for attorney's fees." But the record does not contain evidence supporting that view. To begin, when Elam first applied for final compensation, he asked the bankruptcy court to approve $34,370 in fees and $30 in expenses. In other words, $34,400 in total—the precise amount that Crawford tendered to Elam's trust account. After Crawford transferred that sum to the trust account, Elam jumped

9

the gun in disbursing those funds to himself without court approval. But the record does not indicate that those funds were meant for anything else other than attorney's fees.

Indeed, Crawford never hinted—let alone stated—that she transferred those funds to Elam for plan confirmation, such as for potential distribution to creditors. Far from it, Crawford stated that she wrote this $34,400 check as payment for "attorney's fees." Bankr. Ct. Dkt. 362, at 46:7–23. Likewise, when BONY's counsel pressed Elam about this transfer, it did so out of concern that the bankruptcy court had yet to approve his "fee apps." Bankr. Ct. Dkt. 294, at 14. In response, Elam asserted that in "every case I have ever been in," "the *fees* are held in trust until the order is entered." *Id.* at 13 (emphasis added). Elam further explained that he kept these fees in his trust account pending court approval for "the same reasons [BONY] worries about it"—"I don't want them dissipated." *Id.* Elam may not have acted properly in holding onto unapproved fees simply out of concern that his client might deplete them. But the point remains that Elam did not lie when he described the purpose of these funds as attorney's fees.

The bankruptcy court expressly rested its sanctions order in part on its finding that Elam made this allegedly false statement about the purpose of the

10

retained funds—but it is unclear to what extent. We therefore vacate this portion of the sanctions order and remand for further proceedings.

B.

All that said, the bankruptcy court did not err in finding that Elam committed professional misconduct by "misappropriating his client's funds for his own personal use." Although the ultimate "purpose" of these funds may have been to compensate Elam, that does not mean that he could start withdrawing them absent court approval. As the bankruptcy court explained, Rule 5–1.1(a) of the Rules Regulating the Florida Bar requires attorneys to keep client funds held in trust "separate from the lawyer's own property." Moreover, money held in trust "for a specific purpose," such as "advances for fees," "must be applied only to that purpose." Rules Regulating the Florida Bar R. 5–1.1(b). Here, the bankruptcy court properly determined that Elam violated this rule by (1) "failing to keep the Trust Account funds 'separate from [his] own property,'" and (2) "failing to apply the Trust Account funds 'only to' the 'specific purpose' for which the funds were being held."

For his part, Elam concedes that he may have violated section 330 of the Bankruptcy Code by failing to obtain court approval for these fees—he agrees that he took this money too soon. But, according to Elam, failing to obtain court approval in violation of the Bankruptcy Code does not necessarily amount to

11

misappropriation in violation of Florida's Bar rules. He insists that he did not violate Florida's Bar rules by withdrawing these funds absent court approval—he disputes that he took money that wasn't his. Elam argues that he earned this $34,400 payment, and so it qualified as *his money*—not client property that needed to be kept in a trust account.

But fees held in trust for a client do not become the attorney's property "until they are earned." *The Florida Bar v. Bailey*, 803 So.2d 683, 692 (Fla. 2001) (per curiam). And fees for counsel to a debtor-in-possession do not become enforceable—in other words, earned—unless the bankruptcy court approves them. *In re 5900 Assocs., Inc.*, 468 F.3d 326, 331 (6th Cir. 2006); *cf. Bailey*, 803 So.2d at 692 (finding that fees were not "earned" because they were required to be "determined and approved" by the trial court judge). Indeed, before the bankruptcy court, even Elam acknowledged that these funds were not yet his; rather, they remained "an asset of the estate" that he was holding in trust for the debtor pending court approval. Bankr. Ct. Dkt. 408, at 17:25–18:4. Likewise, in his application for final compensation, Elam represented that his "fees sought" were "*dependent* upon Court approval." Bankr. Ct. Dkt. 175, at 11 (emphasis added). Accordingly, the bankruptcy court did not err in sanctioning Elam for his misappropriation of those funds. *See Mroz*, 65 F.3d at 1575 (explaining that

bankruptcy courts retain "inherent powers" to "discipline attorneys appearing before it," including for misconduct).

C.

Elam also disputes the amount of sanctions awarded in favor of Crawford. He argues that forcing him to refund fees to Crawford, "who received the benefit of [his] work," would amount to "a windfall."  But, as explained above, Elam failed to earn the $34,400 that he took from the trust account, and so the bankruptcy court properly ordered him to return that money to Crawford.

Still, the bankruptcy court went further—ordering Elam to return the $14,350 in fees that it had approved as interim compensation.  And it is unclear how forcing Elam to return *those fees* would serve the bankruptcy court's stated goal of compensating Crawford "for actual losses" that she sustained as the result of Elam's misappropriation of the separate $34,400 payment.  The bankruptcy court likely could have ordered Elam to disgorge these fees as punishment for his misconduct.  *See In re Whitley*, 737 F.3d 980, 987 (5th Cir. 2013) (explaining that "the bankruptcy court has broad authority to discipline attorneys and to award or disgorge fees paid in connection with bankruptcy proceedings" (citation omitted)).  In addition to their ability to impose contempt sanctions (which serve to compensate or coerce), courts also enjoy "inherent power to police against bad faith conduct before it."  *Sciarretta v. Lincoln Nat. Life Ins. Co.*, 778 F.3d 1205,

13

1214 n.7 (11th Cir. 2015).  But, here, the bankruptcy court only awarded monetary sanctions for "compensatory" purposes.  On remand, the bankruptcy court should therefore consider whether and to what extent Elam must return the $14,350 in fees already awarded.  *Cf. Porto*, 645 F.3d at 1306 (remanding to the bankruptcy court "so that it can either flesh out its reasons" for imposing sanctions or decide that sanctions are not warranted).

Finally, we note that Elam has not necessarily given up any and all rights to payment for the work that he performed in this Chapter 11 proceeding.  We neither consider nor decide the amount of compensation, if any, that Elam ultimately deserves.  Of course, Elam's conduct may warrant disallowing or disgorging him of certain fees that he might have otherwise been owed.  But that is a matter that the bankruptcy court should consider in the first instance on remand.

## IV.

Accordingly, we vacate the bankruptcy court's order insofar as it grants sanctions based on its finding that Elam made false representations and requires Elam to return the $14,350 in attorney's fees awarded, and remand for further proceedings.  We affirm the bankruptcy court's sanctions order in all other respects.

**VACATED AND REMANDED IN PART, AFFIRMED IN PART.**

14